**Gretchen Williams RICHARDSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 10–05–00348–CR.

Court of Appeals of Texas, Waco.

Nov. 9, 2005.

Kirk J. Oncken, Houston, for appellant.

John W. Segrest, McLennan County Dist. Atty., Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

### Introduction

Gretchen Williams Richardson appeals the trial court's denial of her request to reduce her bail to $50,000. This appeal is

brought procedurally under Rule 31 of the Texas Rules of Appellate Procedure.

After her arrest for the murder of her husband, but before her indictment for that offense, Richardson filed an application for writ of habeas corpus, seeking a reduction of the original bail amount of $500,000. At a hearing, the trial court reduced her bail to $250,000. Richardson did not appeal that ruling.

After being indicted, Richardson filed "Defendant's Second Application for Writ of Habeas Corpus Seeking Bail Reduction." It was given an ancillary cause number. Richardson sought bail reduction to $50,000, which she alleged was the highest amount that she could meet. The trial court held a hearing and reduced bail to $200,000. This appeal followed.

■ Initially we address the State's assertion that the Second Application was merely a motion to reduce bail and that we lack jurisdiction to review the trial court's allegedly interlocutory ruling. *See Benford v. State*, 994 S.W.2d 404, 408–09 (Tex. App.-Waco 1999, no pet.). *But see Saliba v. State*, 45 S.W.3d 329, 329 (Tex. App–Dallas 2001, no pet.) (holding that appeal of denial of motion to reduce bond is among "narrow exceptions" to general rule requiring conviction before a defendant may appeal); *Bridle v. State*, 16 S.W.3d 906, 907 n. 1 (Tex.App.-Fort Worth 2000, no pet.) (same). Richardson's effort in the trial court was presented as a second application for writ of habeas corpus seeking bail reduction. It alleges an illegal confinement and restraint of liberty, constitutional violations, and statutory violations. *See* TEX.CODE CRIM. PROC. ANN. art. 11.14 (Vernon 2005). In this appeal, the State argues that the application cannot be a second application for a writ of habeas corpus—and was only a motion to reduce bail—because it did not contain the allegations required by article 11.59 of the Code

of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 11.59 (Vernon 2005). Because the State, which did not raise this complaint in the trial court, and the trial court both treated Richardson's effort as an application for writ of habeas corpus, we will as well. We have jurisdiction of an appeal of a trial court's denial of habeas corpus relief. *E.g., Ex parte Davis*, 147 S.W.3d 546 (Tex.App.-Waco 2004, no pet.).

### Standard of Review

■ We review a trial court's pretrial bail determination under an abuse-of-discretion standard. *Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex.Crim.App. [Panel Op.] 1981); *Davis*, 147 S.W.3d at 548. A habeas applicant bears the burden of proving that her bail is excessive. *Rubac*, 611 S.W.2d at 849; *Davis*, 147 S.W.3d at 548.

Article 17.15 lists five factors to be considered in determining what bail is appropriate:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
2. The power to require bail is not to be so used as to make it an instrument of oppression.
3. The nature of the offense and the circumstances under which it was committed are to be considered.
4. The ability to make bail is to be regarded, and proof may be taken upon this point.
5. The future safety of a victim of the alleged offense and the community shall be considered.

TEX.CODE CRIM. PROC. ANN. art. 17.15 (Vernon 2005).

■ Other pertinent factors include family and community ties, work history, length of residence in the county, prior criminal record, conformity with conditions

of prior bonds, and any aggravating circumstances of the offense. *Rubac,* 611 S.W.2d at 849–50; *Davis,* 147 S.W.3d at 548.

We will review the trial court's decision in light of the above factors.

### Sufficiently High to Give Reasonable Assurance of Appearance

■ "[B]ail should be set high enough to give reasonable assurance that the defendant will appear at trial." *Ex parte McCullough,* 993 S.W.2d 836, 837 (Tex. App.-Waco 1999, no pet.) (quoting *Ex parte Brown,* 959 S.W.2d 369, 371 (Tex. App.-Fort Worth 1998, no pet.)). A defendant's ties to the community and work history bear on the adequacy of bail to give reasonable assurance he will appear. *See id.* at 837–38. A defendant's compliance with the conditions of any prior bonds likewise bears on this issue.

■ Richardson did not testify. Her brother Jeff and her father George testified that they believed she would appear in court, based in part on her voluntarily turning herself in to the Robinson police. Richardson had lived in McLennan County (in Lorena, where she owned a home) for six years and has friends in the Waco area. She had been working as a real estate agent, but her license had been suspended because of her arrest. She and her deceased husband had a business on the side raising goats. Richardson has four children currently the subject of a custody suit pending in McLennan County, and she desired to be near them while her criminal case is pending. Richardson's parents are retired and live near Houston.

Jeff testified that Woody, another brother, is a professional baseball player who earns $3 million per year. Woody has been paying Richardson's legal fees, but he is not willing to help pay for a bond. And yet another brother, George, Jr., testified

by affidavit that he and other members of his family were concerned that "she would very likely be a flight risk." Andrea Bell, who was a friend of Richardson, testified that she believes that if Richardson were released on bond, she would harm herself.

The evidence on this factor is conflicting, and thus the trial court was within its discretion to weigh it in favor of a fairly high bail to ensure Richardson's appearance.

### Not So High as to Constitute an Instrument of Oppression

■ Bail set in a particular amount becomes "oppressive" when it is "based on the 'assumption that [the accused cannot] afford bail in that amount and for the express purpose of forcing [the accused] to remain incarcerated pending [trial].'" *Id.* at 837 (quoting *Ex parte Harris,* 733 S.W.2d 712, 714 (Tex.App.-Austin 1987, no pet.)). The record contains nothing to indicate that the trial court rendered its decision on this basis, especially with the trial court having reduced bail from $500,000 to $250,000 and then to $200,000.

### Nature and Circumstances of the Offense

Richardson is charged with murdering her husband John by shooting him. No other details of the crime are in the record before us. Bell testified that Richardson often joked about killing her husband before his murder, and eventually it became uncomfortable for Bell.

Murder carries a potential maximum sentence of life imprisonment and a fine of up to $10,000. *See* TEX. PEN.CODE ANN. §§ 12.32, 19.02(c) (Vernon 2003). The potential life sentence and the evidence of premeditation suggest that a high bail amount is appropriate.

### Ability to Make Bail

 Although a defendant's ability to make bail is a factor for consideration, inability to make bail, even to the point of indigence, does not control over the other factors. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex.Crim.App. [Panel Op.] 1980); *Davis*, 147 S.W.3d at 548.

Richardson's father said that he and Jeff had raised $5,000 for a bond, and they had learned from commercial bondsmen that the bond fee would be ten percent of the bail amount. Jeff had been handling Richardson's financial affairs since her arrest, and her bank account was overdrawn by $290. Her home is valued between $135,000 and $145,000, and the mortgage amount on that home is around $112,000. She has no property to sell that would have significant value, and she has exhausted all of her available resources.

The evidence on this factor tends to support a further reduction of bail.

### Future Safety of the Community

In his affidavit, George, Jr. additionally stated that he and other members of his extended family are concerned for their safety if Richardson is released on bond. He and other family members are extremely concerned about the influence that Richardson would have on her minor children if she were released on bond, as he believes that Richardson has been attempting to pressure them to testify favorably and untruthfully in her behalf. George, Jr. does not believe that there are sufficient safeguards to insure the children's safety. He concluded his affidavit with a request that the trial court not lower Richardson's bail.

We agree with the State that the evidence pertinent to this factor tends to support the trial court's setting bail in a higher amount.

### Prior Criminal History

There is no evidence that Richardson has a prior criminal history, which indicates the lack of necessity for a particularly high bail. But on the other hand, evidence suggests that a relatively high bail is necessary because there is evidence that Richardson poses a flight risk.

### Conclusion

After considering the factors of article 17.15 and the record before us, we cannot say the trial court abused its discretion in refusing to reduce Richardson's bail to $50,000. *See McCullough*, 993 S.W.2d at 839. Accordingly, we overrule her sole issue and affirm the trial court's ruling.

Chief Justice GRAY concurs in the result without a separate opinion.