Opinion issued April 29, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-01134-CR

———————————

Guillermo Montalvo, Appellant

V.

THE STATE OF
TEXAS, Appellee



 



 

On Appeal from the 208th District Court

Harris County, Texas



Trial Court Case No. 1242494

 



 

O P I N I O N

          Appellant
Guillermo Montalvo has been charged with murder (trial court cause number
1237568).  See Tex. Penal Code Ann.
§ 19.02 (Vernon 2003).  His
pretrial bail was originally set at $50,000, and he filed a habeas corpus
petition (trial court cause number 1242494) complaining that the bail was
excessive and seeking a reduction of the bail to $5,000.  See Tex. Code Crim. Proc.
art. 11.24 (Vernon 2005).  After a
hearing, the trial court increased Montalvo’s bail to $100,000.  Montalvo appeals from this decision and asks
that his bail be reduced to $10,000.  See Tex.
R. App. P. 31.  He also asks that
we order the trial court to reinstate attorney Tony Aninao as his appointed
counsel of record.

          We
affirm the trial court’s ruling on the amount of Montalvo’s bail.  We lack jurisdiction over Montalvo’s
complaint about the withdrawal of his original appointed counsel and
appointment of new counsel.

Factual
and Procedural Background

          On October 18, 2009, appellant Guillermo Montalvo was charged in Harris County with one count
of murder.[1]  The State alleged that on or about
October 5, 2009, Montalvo “did then and there unlawfully intentionally and
knowingly cause the death of MELVIN SANCHEZ . . . by STABBING
THE COMPLAINANT WITH A KNIFE.”  The case
was assigned to the 183rd District Court, and bail was set at $50,000.  Two days later, Montalvo represented to the
trial court that he was financially unable to hire an attorney, and attorney
Tony Aninao was appointed to represent him. 
After the appointment of Aninao, Montalvo’s case was transferred to the 208th
District Court, where a companion case was pending against another defendant
also charged with complicity in the murder of Melvin Sanchez.

On November 20, 2009, Montalvo filed an original application for a writ
of habeas corpus.  In that application,
he alleged that he is a United States citizen and a resident of Harris County.  He claimed that he was willing and able to
post a bond in an amount sufficient to ensure his presence before the trial
court to answer the pending charges.  He
alleged that the amount of bail previously set by the trial court violated his
rights under the Eighth and Fourteenth Amendments to the United States
Constitution; Article I, sections 11, 11A, and 13 of the Texas Constitution;
and Articles 17.031, 17.15, 17.151, and 17.21 of the Texas Code of Criminal
Procedure.

On December 10, 2009, the trial court held a hearing on Montalvo’s
petition for habeas corpus.[2]  The State presented one witness, police
officer H.A. Chavez.  Officer Chavez
testified that he had investigated a homicide that took place on October 5,
2009, at a nightclub in Harris County. 
Two men entered a restroom, and four men followed them.  A brawl ensued, and the first two men were
punched, kicked, and stabbed.  One man,
Melvin Sanchez, died as a result of his wounds. 
The four suspects identified as a result of the investigation were
Montalvo, his brothers Alfonso (a/k/a “Paco”) and Richard, and Erick Dono.  The four suspects were seen dragging Sanchez
out of the restroom and fleeing the scene. 
Officer Chavez identified Montalvo as a participant in the assault, and
he also testified that Paco was suspected of actually stabbing the two
victims.  One witness reported to Officer
Chavez that Montalvo bragged about beating one of the men with a toilet cover.

According to Officer Chavez, after
the incident Montalvo and his brothers fled to Mexico.  As of the time of the hearing, Montalvo’s
brothers had not been found.  Montalvo,
in contrast, while still in Mexico had contacted a police officer, and
ultimately he voluntarily returned to Houston and gave a statement.  In his statement, Montalvo conceded that he
had gone to the nightclub so that his brother could fight one of the victims,
he knew his brother carried a knife, and he participated in the fight while
high on cocaine.

Montalvo also testified at the
hearing.  He testified that he was born
in Houston and that he is a United States citizen.  He testified that he has lived in the Houston
area his entire life and all of his relatives live, or have previously lived,
in the Houston area.  He further
testified that he was 20 years old, that he had two daughters and was expecting
the births of two more children, and that he was then separated from the mother
of his children.

Montalvo testified that after
fleeing the crime scene, he stayed for two or three days in Reynosa, Mexico and
then stayed with a sister-in-law in Ciudad Miguel Alemán.  After contacting the police by telephone, he
crossed the border back into the United States by swimming across the Rio
Grande River to avoid immigration officials.  He subsequently surrendered to the police
because he had not stabbed either of the victims, he was tired of running, and
he wanted to clear his name.

With respect to his work history,
Montalvo testified that he attended, but did not complete, training to become a
computer technician.  He testified that
he did not complete his course of study because he “got locked up.”  He also testified that he had worked for “at
least a month” doing grinding for Spitzer Industries, and he was employed for
approximately two weeks providing security for a construction company.

Montalvo testified that he had
misdemeanor convictions as an adult for failure to produce identification to a
police officer and burglary of a motor vehicle. 
In March 2009, Montalvo posted a bond in connection with the burglary
charge, and he ultimately forfeited on the bond.  He served 10 days in jail in for the
failure-to-identify conviction, and 150 days for the burglary conviction.  In addition, Montalvo admitted on cross-examination
that he had been sent to the Texas Youth Commission for the juvenile offense of
unauthorized use of a motor vehicle and that on one occasion he had run away
from the Texas Youth Commission.

With respect to bail, which had
been initially set at $50,000 for the murder charge, Montalvo testified that he
had tried unsuccessfully to obtain a bond. 
His understanding was that he needed $5,000 cash collateral and a
co-signor to obtain the bond.  He
testified that he had approximately $2,000 in cash that he could use to obtain
a bond.  He did not have a checking or
savings account, but he did own an eight-year-old sports utility vehicle.  He owned no jewelry, stocks, bonds, or real
estate that could be used to raise money to obtain a bond.  Montalvo asked the trial court to grant a
reduction in bail to a range of $10,000–$15,000.  He agreed to consent to electronic monitoring
and urine tests pending trial of his case. 


          After the testimony of the two
witnesses, the State argued that Montalvo’s bail had been set too low.  The State argued that he was charged with a
violent crime, he had forfeited on a bond in the past, and he had family
contacts in Mexico, where he had fled after the incident at issue.  He had previously evaded law enforcement
while crossing the United States-Mexico border. 
Based on these factors, the State argued that bail of $200,000 would be
more appropriate.

          Montalvo argued after the conclusion
of testimony that a reduction of bail to $20,000 would be appropriate because
that was approximately what he had testified he could satisfy.  He argued that bail of $20,000, in addition
to other conditions such as electronic monitoring, would be sufficiently high
to assure that he complied with the undertaking.  He also argued that bail should not be used
as an instrument of oppression.  As
mitigating factors, he asserted that he had not been the person who stabbed any
victim, that there was no evidence of an advance plan to kill Sanchez, and that
he had voluntarily returned to surrender after initially fleeing.

          The trial court denied habeas corpus
relief and also denied Montalvo’s request to reduce bail.  The trial court increased his bail to
$100,000 and certified his right to appeal. 
A notice of appeal was filed on December 10, 2009, and Aninao was
appointed as Montalvo’s counsel on appeal.

          On December 14, 2009, Aninao filed in
the trial court a motion to withdraw as attorney of record.  The motion stated that the reason for the
request was that the trial court “informed undersigned appointed counsel to
withdraw since court wanted to appoint another lawyer.”  On the same day the trial court granted the
motion.

Standard
of Review

The Eighth Amendment to the United States Constitution provides that “Excessive
bail shall not be required, nor excessive fines imposed, nor cruel and unusual
punishments inflicted.”  U.S. Const. amend. VIII; Schlib v. Kuebel, 404 U.S. 357, 365, 92
S. Ct. 479, 484 (1971) (applying Eighth Amendment prohibition of excessive bail
to the States).[3]  The standard for reviewing whether excessive
bail has been set is whether the trial court abused its discretion.  See Ex
parte Rubac, 611 S.W.2d 848, 849–50 (Tex. Crim. App. 1981) (reviewing bail
pending appeal for abuse of discretion); Cooley
v. State, 232 S.W.3d 228, 233 (Tex. App.—Houston [1st Dist.] 2007, no pet.).
 In the exercise of its discretion, a
trial court should consider the following factors in setting a defendant’s bail
before trial:

1.       The bail shall be
sufficiently high to give reasonable assurance that the undertaking will be
complied with.

2.       The power to require bail
is not to be so used as to make it an instrument of oppression.

3.       The nature of the offense
and the circumstances under which it was committed are to be considered.

4.       The ability to make bail is
to be regarded, and proof may be taken upon this point.

5.       The future safety of a
victim of the alleged offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005); see
Ludwig v. State, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991).  A defendant carries the burden of proof to
establish that bail is excessive.  Ex parte Rubac, 611 S.W.2d at 849; In
re Hulin, 31 S.W.3d 754, 759 (Tex. App.—Houston [1st Dist.] 2000, no pet.).
 In reviewing a trial court’s ruling for
an abuse of discretion, an appellate court will not intercede as long as the
trial court’s ruling is at least within the zone of reasonable disagreement.  Cooley,
232 S.W.3d at 234; Ex parte Beard, 92
S.W.3d 566, 573 (Tex. App.—Austin 2002, pet. ref’d) (citing Montgomery v. State, 810 S.W.2d 372, 391
(Tex. Crim. App. 1990)).  We acknowledge,
however, that an abuse-of-discretion review requires more of the appellate
court than simply deciding that the trial court did not rule arbitrarily or
capriciously.  Cooley, 232 S.W.3d at 234.  The
appellate court must instead measure the trial court’s ruling against the
relevant criteria by which the ruling was made.  Id.

Analysis

I.                 
Bail

The primary purpose for setting bail is to secure the presence of the
defendant in court at his trial.  Ex parte Vasquez, 558 S.W.2d 477, 479 (Tex.
Crim. App. 1977); Golden v. State, 288
S.W.3d 516, 519 (Tex. App.—Houston [1st Dist.] 2009, pet. ref’d).  The amount of bail should be set sufficiently
high to give reasonable assurance that the accused will comply with the
undertaking, but should not be set so high as to be an instrument of oppression.
 Ex
parte Bufkin, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977); Ex parte Willman, 695 S.W.2d 752, 753
(Tex. App.—Houston [1st Dist.] 1985, no pet.).  Courts should also consider the defendant’s work
record, family ties, residency, criminal record, conformity with previous bond
conditions and aggravating factors involved in the offense.  See Ex
parte Rubac, 611 S.W.2d at 849.

Sufficiency of bail

As Montalvo is complaining that bail of $100,000 is excessive, and the
State has not appealed from the trial court’s rejection of the State’s
suggestion to set bail at a higher amount, there is no dispute that the bail set
by the trial court is sufficiently high to give reasonable assurance that Montalvo
would comply with the undertaking of appearing in court as required in the
future. 

Nature and circumstances of the offense

Montalvo has been charged with murder, a first-degree felony
offense.  Tex. Penal Code Ann.
§ 19.02 (Vernon 2003).  Our
consideration of the nature and circumstances of the offense requires that we
take note of the range of punishment permitted by law in the event of a
conviction.  See, e.g., Ex parte Rodriguez,
595 S.W.2d 549, 550 (Tex. Crim. App. 1980); Ex
parte Reyes, 4 S.W.3d 353, 355 (Tex. App.—Houston [1st Dist.] 1999, no pet.).
 In this case, the potential unenhanced
punishment for murder ranges from 5 to 99 years or life in prison.  Tex.
Penal Code Ann. § 12.32 (Vernon Supp. 2009).  

Murder is an unquestionably serious offense, and bail set in the amount
of $100,000 or more in non-capital murder cases has been routinely affirmed by
courts of appeals.  See, e.g., Milner v. State,
263 S.W.3d 146, 148–51 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (affirming
$500,000 bail for defendant accused of murdering his wife and attempting to
murder his mother-in-law); Richardson v.
State, 181 S.W.3d 756, 758–60 (Tex. App.—Waco 2005) (affirming $200,000
bail for defendant accused of killing her husband).[4]  Most of these cases, however—including all of
the authorities submitted by the State[5]—are
at least partially distinguishable from Montalvo’s case insofar they involved
bail assessed for defendants accused of directly committing murder, and as the
evidence presented at the habeas corpus hearing suggests that Montalvo did not
personally stab the murder victim in this case. 
Instead, the evidence offered against Montalvo supports a charge of
murder based only on his actions to assist and encourage the murder of Sanchez.  This evidence included Montalvo’s awareness
of his brother’s intention to fight Sanchez at the night club, his awareness
that his brother carried a knife, his presence during the assault, his bragging
that he beat one of the victims with a toilet cover, and his flight
afterwards.  (Based upon this evidence, along with
Montalvo’s admission that he was high on cocaine during the assault, we reject
Montalvo’s suggestion that the evidence against him presented by the State is
so weak that bail should be reduced based on the likelihood of acquittal.)

We must take into account the allegations of Montalvo’s indirect role in
the stabbing as part of the nature and circumstances of the alleged
offense.  However, we must also
acknowledge that under the law of parties, if Montalvo acted with the intent to
promote or assist the commission of the offense by encouraging, aiding, or
attempting to aid another person in committing the offense, he is just as
criminally responsible for the offense as if he had directly committed murder
by his own conduct.  See Tex. Penal Code Ann.
§§ 7.01(a), 7.02(a)(2) (Vernon 2003). 

A similar circumstance was presented in Ex parte Davis, 147 S.W.3d 546 (Tex. App.—Waco 2004, no pet.), in
which the two brothers Davis were charged with murder.  Pretrial bail was set at $1,000,000 for each
of the brothers.  At an evidentiary
hearing on the brothers’ habeas corpus petition to reduce bail, the evidence
showed that the two brothers were cocaine dealers and that Chad Davis hired
three men to assault the murder victim, who had “ripped off the [Davises] for
$100,000 worth of drugs and/or money.”  Davis, 147 S.W.3d at 549.  When the victim was confronted, a gun battle
ensued and the victim was killed.  The
evidence adduced by the State identified Chad as the “primary instigator of the
whole transaction.”  Id. at 550.  The only
evidence referenced by the court of appeals about the other brother, Trey,
suggested that he was “perhaps” involved in hiring the hitmen and that he
“knowingly participated in the events leading up the murder and knowingly
assisted the assailants as they fled the state.”  Id.  In reviewing Trey’s bail, which the trial
court had set at $1,000,000, the Waco Court of Appeals considered, among other
mitigating factors, the fact that the evidence suggested that Trey did not
directly commit the murder.  Id. at 553.  However, in reducing Trey’s bail to $500,000,
the court also noted that the evidence suggested that Trey knowingly
participated in the plot that resulted in murder.  Id.  Similarly, in Montalvo’s case we note that
the information presented at the habeas corpus hearing suggests he did not personally
stab the murder victim, but that he nevertheless may have knowingly
participated in the offense.

As an additional circumstance of the offense of murder, Montalvo argues
that his voluntary surrender is a factor that should be considered in lowering
his bail.  The evidence presented at the
hearing suggested that Montalvo voluntarily returned to the United States after
initially fleeing to Mexico.  We
acknowledge Montalvo’s voluntary surrender as a factor favoring a reduction of
bail.  See, e.g., Ex parte Hellenguard,
622 S.W.2d 875, 875 (Tex. Crim. App. 1981); Ex
parte Walton, 583 S.W.2d 786 (Tex. Crim. App. 1979).

Future safety of victims and the community

The parties do not directly address the future safety of the victims and
the community.  Sanchez is dead, so there
is no issue of his future safety.  There
was no evidence at the hearing on Montalvo’s petition to suggest that Montalvo
presents any direct threat to the other assault victim or to the families of
the victims.  Nevertheless, we assume, as
we must, that the trial court considered these factors in assessing bail.  See
Tex. Code Crim. Proc. Ann. art.
56.02(a)(2) (Vernon Supp. 2009) (“A victim, guardian of a victim, or close
relative of a deceased victim is entitled to . . . the right to have the
magistrate take the safety of the victim or his family into consideration as an
element in fixing the amount of bail for the accused”).

Ability to make bail

Montalvo testified that he did not have the resources available to post a
bond in the amount of $50,000 or more. 
He testified about the amount of cash available to him, his ownership of
a vehicle, and his lack of other valuable property.  No evidence was presented about any
discussions with bondsmen or the maximum amount of bail that Montalvo believed
he could satisfy.  Similarly, no evidence
was presented about whether Montalvo’s family had any ability to help him make
bail.  See Milner, 263 S.W.3d at 149 (“To show that he is unable to make
bail, a defendant generally must show that his funds and his family’s funds
have been exhausted.”).  Based on his
attorney’s arguments to the trial court, it appears that Montalvo possibly
could make bail of as much as $20,000.

The Code of Criminal Procedure requires the trial court to consider the
defendant’s ability to make bail.  Tex. Code Crim. Proc. Ann. art. 17.15(4)
(Vernon 2005).  However, the Court of
Criminal Appeals has emphasized that ability or inability to make bail does
not, alone, control in determining the amount. 
See Ex parte Rodriguez, 595 S.W.2d at 550; Ex parte Bufkin, 553 S.W.2d at 118. 
The unrebutted evidence of Montalvo’s inability to make bail of $100,000
is a factor in favor of reducing his bail, but that factor did not require the
trial court to set bail at an amount that Montalvo could satisfy.  

Whether bail is being used as an instrument of oppression

Montalvo presents no argument or evidence that bail is being used as an
instrument of oppression in this case. 
Our independent review of the habeas corpus record likewise does not
suggest that the trial court deliberately set bail at an excessively high level
solely to prevent Montalvo from posting bail.

Other factors

In addition to the considerations enumerated in the Code of Criminal
Procedure, courts also consider the defendant’s work record, family ties,
residency, criminal record, conformity with previous bond conditions and
aggravating factors involved in the offense.  See Ex
parte Rubac, 611 S.W.2d at 849. 
Here, on balance, these factors suggest that a high bond is
justified.  Montalvo was twenty years old
at the time of the hearing on his petition to reduce bail.  Earlier in the same year he had defaulted on
a bond posted in connection with charges that he burglarized a motor
vehicle.  After defaulting on the bond he
pleaded guilty and served time for the burglary charge before the incident in
which Sanchez was murdered.  Montalvo
fled to Mexico with his brothers, where other members of Montalvo’s family also
live.  Although Montalvo had two children
in the Houston area and was expecting the imminent births of two more children
at the time of the hearing, the evidence at the hearing suggested that he was
separated from the mother of the children. 
Moreover, the evidence at the hearing suggested that Montalvo has no
meaningful work history that would establish an additional tie to the Houston
area.

Montalvo testified that he returned to Houston believing he would be able
to explain that he was not the person who stabbed Sanchez, and thus clear his
name.  Now that, rather than achieving
exoneration, he has been charged with murder, the trial court could have
reasonably concluded that his history demonstrates he is a flight risk,
justifying high bail.

No abuse of discretion

In light of the foregoing analysis,
we conclude that the trial court did not abuse its discretion in setting bail
at $100,000 for the murder charge against Montalvo.  That amount is not clearly excessive in light
of the seriousness of the offense of murder and the violent circumstances of
the alleged crime, even taking into account the circumstance that Montalvo’s
alleged role may have been limited to assistance and encouragement, as opposed
to directly stabbing the murder victim. 
Montalvo did establish some factors that could justify a lower amount of
bail, such as Montalvo’s voluntary submission to the police and the evidence of
his limited funds available to post a bond. 
However, still other factors support a higher amount of bail, such as
evidence suggesting that Montalvo may be a flight risk.  

It is not our role to simply
substitute our judgment for that of the trial court.  Because we conclude that the trial court’s ruling is within the zone of reasonable
disagreement about the proper amount of bail in this circumstance, we will not
disturb the trial court’s ruling. 

II.              
Appointed counsel

Finally, we consider Montalvo’s request that we direct the trial court to
reinstate Tony Aninao as his appointed trial counsel.  

This is an appeal from denial of Montalvo’s petition for habeas
corpus.  Montalvo’s right to appeal is
limited to the matters properly raised in his habeas corpus petition.  The statutory authority for Montalvo’s
petition is Texas Code of Criminal Procedure article 11.24, which provides:

Where a person has been committed to custody for failing to enter into
bond, he is entitled to the writ of habeas corpus, if it be stated in the
petition that there was no sufficient cause for requiring bail, or that the
bail required is excessive.  If the proof
sustains the petition, it will entitle the party to be discharged, or have the
bail reduced.

Article 11.24
provides no authority for Montalvo to raise any issue in his habeas corpus
petition other than the cause for or excessiveness of his bail.  Moreover, the appellate record reflects that
in fact, no issue relating to the appointment of trial counsel was raised in
the habeas corpus petition or hearing.  Aninao
filed his motion to withdraw in the murder case (trial court cause
number 1237568), not the habeas corpus proceeding (trial court cause number
1242494), after the trial court had already
denied the habeas corpus petition and after Montalvo had filed his notice of
appeal.  

Even if the issue of appointed counsel had been raised in the course of
the habeas corpus proceeding, we still could not consider it.  Appellate Rule 31.2 expressly provides that “[t]he
appellate court will not review any incidental question that might have arisen
on the hearing of the application before the trial court.”  Tex.
R. App. P. 31.2.  

We thus conclude that we lack jurisdiction to consider Montalvo’s request
that Aninao be reinstated as his appointed trial counsel.

Conclusion

We affirm the judgment of the trial
court.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.

Justice
Sharp dissenting in part and concurring in part.

Publish.   Tex. R. App. P. 47.2(b).











[1]             Three Montalvo brothers have been identified as suspects involved with
the crime.  Unless otherwise required by
context, references to “Montalvo” in this opinion refer to appellant Guillermo Montalvo.





[2]        By
describing the evidence offered at the hearing, we express no opinion on the
admissibility of any of this evidence in future proceedings in the case.  See,
e.g., Tex. R. Evid.
101(d)(1)(E) (“These rules, except with respect to privileges, do not apply in .
. . proceedings regarding bail except hearings to deny, revoke or increase bail
. . . .”); Garcia v. State, 775
S.W.2d 879, 880 (Tex. App.—San Antonio 1989, no pet.) (hearsay rule did not apply
in habeas corpus proceeding in which reduction of bail was sought); 41 George E. Dix & Robert O. Dawson, Texas
Practice: Criminal Practice and Procedure § 16.15 (2d ed. 2001) (“Such
habeas proceedings are undoubtedly ‘[p]roceedings regarding bail,’ and since
they are not within the explicit and limited exceptions of Rule 101(d)(1)(E),
the Rules appear not to apply.”).  But see Ex parte Graves, 853 S.W.2d 701,
703-04 (Tex. App.—Houston [1st Dist.] 1993, pet. ref’d) (“The Texas Rules of
Criminal Evidence apply in both habeas corpus hearings and proceedings to deny
bail.” (citing Garcia, 775 S.W.2d at
881)).  Moreover, we offer no view on the
weight of any evidence discussed herein as it may relate to any future
proceedings.  See Ex parte Paul, 420
S.W.2d 956, 957 (Tex. Crim. App. 1967) (noting policy in habeas corpus appeals
relating to bail “to refrain from stating the facts at length and of expressing
a conclusion as to the sufficiency of the evidence to show the defendant’s
guilt” in order to avoid prejudgment by appellate courts).





[3]             The Bill of Rights contained within the Texas Constitution provides that
“All prisoners shall be bailable by sufficient sureties, unless for capital
offenses, when the proof is evident; but this provision shall not be so construed
as to prevent bail after indictment found upon examination of the evidence, in
such manner as may be prescribed by law.” 
Tex. Const. art. I,
§ 11.  The Texas Bill of Rights
further specifies that “Excessive bail shall not be required . . . .”  Id.,
art. I, § 13.  Montalvo alleged in
the trial court that his bail violated his rights under Article I, sections 11,
11A, and 13 of the Texas Constitution and Articles 17.031, 17.15, 17.151, and
17.21 of the Texas Code of Criminal Procedure. 
In his briefing on appeal, however, Montalvo has not offered separate
argument or authorities to support a separate analysis on state constitutional
grounds, and any such grounds are accordingly waived.  See Tex. R. App. P. 38.1(i); Heitman v. State, 815 S.W.2d 681, 690
n.23 (Tex. Crim. App. 1991).





[4]        Our
review of results in recent unpublished cases also supports this
conclusion.  See Sherman v. State, No. 01-06-00466-CR, 2007 WL
54806 (Tex. App.—Houston [1st Dist.] Jan. 9, 2007, no pet.) (mem. op. not
designated for publication) (affirming $250,000 bail for murder charge); Haynes v. State, No. 11-09-00135-CR, 2009
WL 2403569 (Tex. App.—Eastland Aug. 6, 2009, no pet.) (mem. op. not designated
for publication) (affirming $500,000 bail for murder charge involving a drive-by
shooting); Ex parte Wilson, No.
04-08-00553-CR, 2009 WL 330994 (Tex. App.—San Antonio Feb. 11, 2009, no pet.)
(mem. op. not designated for publication) (affirming $200,000 bail when
defendant charged with murder by stabbing during fight provoked by defendant); Ex parte McBride, No. 12-07-00241-CR, 2007
WL 4216370 (Tex. App.—Tyler Nov. 30, 2007, no pet.) (mem. op. not designated
for publication) (affirming $250,000 bail for murder charge in which victim was
shot in the back eight times).  Bail of less
than $100,000 for a murder charge has also been approved by courts of appeals in some circumstances.  See, e.g., Contreras v. State, No. 07-04-0085-CR,
2004 WL 2578102 (Tex. App.—Amarillo Nov. 12, 2004, no pet.) (mem. op. not
designated for publication) (affirming trial court’s reduction of pretrial bail
in from $200,000 to $50,000); Ex parte Gomez, No. 08-01-00321-CR, 2001 WL
1654978, at *3 (Tex. App.—El Paso Dec. 27, 2001, no pet.) (mem. op. not
designated for publication) (reducing bail from $100,000 to $50,000 for mother
charged with murder by abandoning newborn child).

 





[5]        The State
provided three case citations as support for the reasonableness of $100,000
bail in this murder case.  One of those
cases, Hughes v. State, 843 S.W.2d
236 (Tex. App.—Houston [14th Dist.] 1992, no pet.), is not comparable because it involved post-trial bail
in a case in which the defendant was convicted of shooting his girlfriend
between the eyes.  In the other two
cases, both of which involved pre-trial bail for a charge of murder, the
defendant was a lone actor who was accused of directly committing an act of
murder.  See Eggleston v. State, 917 S.W.2d 100, 101-03 (Tex.
App.—San Antonio 1996, no pet.) (bail reduced from $1,000,000 to $300,000 when
defendant was accused of beating his child to death); Mora v. State, 773 S.W.2d 629 (Tex. App.—Corpus Christi 1989, no
pet.) ($100,000 bail affirmed when defendant was accused of murdering wife by
shooting her in head).