**Sean Blake JOBE, Appellant**

**v.**

**The STATE of Texas, Appellee**

**No. 11–15–00220–CR**

Court of Appeals of Texas, Eastland.

Opinion filed January 21, 2016

Discretionary Review Refused April 6, 2016

Frank D. Brown, San Angelo, for Appellant.

Teresa J. Clingman, District Attorney, Carolyn D. Thurmond, Assistant, Midland, for Appellee.

Panel consists of: Wright, C.J., Willson, J., and Bailey, J.

## OPINION

JOHN M. BAILEY, JUSTICE

Sean Blake Jobe filed a pre-indictment application for writ of habeas corpus and motion for reasonable bond. At the time

that Jobe filed the application, he had been arrested and charged with capital murder, and his bail had been set at $1,000,000. The trial court held a hearing on Jobe's application and, despite Jobe's indigence, denied his request to reduce the amount of bail. The trial court ordered that bail remain at $1,000,000. Jobe appeals. We affirm.

On appeal, Jobe complains in a single issue that the trial court abused its discretion when it denied Jobe's request to reduce the amount of the bond in this case. Jobe relies in part upon Article 17.15 of the Code of Criminal Procedure, which implements the constitutional right to bail, to support his contention. TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2015). Article 17.15 provides that the amount of bail:

> [I]s to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:
>
> 1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
>
> 2. The power to require bail is not to be so used as to make it an instrument of oppression.
>
> 3. The nature of the offense and the circumstances under which it was committed are to be considered.
>
> 4. The ability to make bail is to be regarded, and proof may be taken upon this point.
>
> 5. The future safety of a victim of the alleged offense and the community shall be considered.

The ability to make bond is one of many factors to be considered; however, it does not control the amount of bail and will not automatically render an amount excessive. *Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex.Crim.App. [Panel Op.] 1980); *Ex parte Branch*, 553 S.W.2d 380, 382 (Tex.Crim.App.1977). If the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be eliminated, and the accused would be in the position to determine what his bail should be. *Branch*, 553 S.W.2d at 382.

In addition to the rules listed in Article 17.15, the following factors may also be considered: possible punishment, the accused's work record, his ties to the community, the length of his residency in the community, his prior criminal record, his conformity with the conditions of any prior bail bond, his ability or inability to make a bail bond, and the existence of any outstanding bail bonds. *Clemons v. State*, 220 S.W.3d 176, 178 (Tex.App.–Eastland 2007, no pet.); *see Charlesworth*, 600 S.W.2d at 317; *Ex parte Ivey*, 594 S.W.2d 98 (Tex.Crim.App. [Panel Op.] 1980); *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim.App.1977); *Ex parte Hunt*, 138 S.W.3d 503 (Tex.App.–Fort Worth 2004, pet. ref'd); *Ex parte Simpson*, 77 S.W.3d 894, 898 (Tex.App.–Tyler 2002, no pet.); *DePena v. State*, 56 S.W.3d 926, 927 (Tex. App.–Corpus Christi 2001, no pet.); *Brown v. State*, 11 S.W.3d 501 (Tex.App.–Houston [14th Dist.] 2000, no pet.); *see also Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim.App. [Panel Op.] 1981). The primary purpose of a bail bond is to secure the accused's presence in court. *Vasquez*, 558 S.W.2d at 479. The accused has the burden to prove that bail is excessive. *Id.*

We review the trial court's ruling on a request to reduce bail under an abuse of discretion standard. *See Rubac*, 611 S.W.2d at 850; *see also* CRIM. PROC. art. 17.15 (giving trial court discretion to set amount of bail). As such, we will not disturb the trial court's ruling if it was within the zone of reasonable disagree-

ment. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991).

The record from the hearing on Jobe's application shows that he was indigent. Although Jobe did not testify at the hearing, his financial information sheet was admitted into evidence as an exhibit at the hearing. The only witness to testify at the hearing was Jobe's father. He testified that Jobe was twenty-one years old at that time. Jobe had been raised by his father, a single parent, and had lived in Midland for the past fifteen years. Jobe had no criminal history or juvenile record. He had attended high school in Midland, but he did not graduate from high school. Before he was arrested, Jobe worked at Starbucks as a barista.

If Jobe had obtained a passport, his father was not aware of it. However, Jobe had no connection with any relative in another country. Jobe has a lot of family in Midland, and according to Jobe's father, "family is everything to him."

Jobe's father testified that, if bond were set at an affordable amount, Jobe could reside with him. Jobe's father had several guns, and he agreed to remove the ones that had not been taken by the police from his house. He also said that he would not have any problem with Jobe wearing an ankle monitor. According to Jobe's father, Jobe has no car, no property, no stocks or bonds, no house, no wife, and no children. Jobe's financial sheet likewise indicated that he had no assets and no money.

Jobe's father did not testify concerning his own financial resources or the resources of any other family member, nor did he testify about any efforts that had been made with respect to securing bail for Jobe. Although no evidence was offered regarding what amount of bail Jobe or his family members could afford, Jobe's attorney requested that bail be reduced to $100,000.

In addition to evidence related to Jobe's indigence and ties to the community, evidence about the nature of the crime was also introduced at the hearing. The affidavit in support of Jobe's arrest warrant was admitted as an exhibit. The affidavit indicated that, around 2:30 a.m. on July 17, 2015, emergency personnel responded to a "shooting/structure fire." Aaron Mitchell Jarmon and a nineteen-year-old female had been shot and killed, and the structure in which they lived had been set on fire. The affidavit reflects that Jobe and coconspirator Ryan David Green sought out Jarmon at the behest of Trace Ryan Roland, the third coconspirator.

Witnesses at the scene reported that two males in dark clothing came to the front door of their residence. One of the men was armed with an assault-type rifle, and the other had a handgun. The men indicated that they were looking for "Aaron." The witnesses informed the two men that Jarmon was in a shed adjacent to the residence. Jarmon and the female victim lived in the shed. The two men walked toward the shed. The witnesses reported that they heard several gunshots and that, shortly afterward, the shed was on fire. The two men fled the scene. Some of the witnesses believed that Jarmon was targeted due to his indebtedness to local drug dealers.

The police investigation eventually led to Roland and then to Green and Jobe. A vehicle matching Green's vehicle was captured on video as it left the area of the murders at approximately 2:32 a.m. on July 17, 2015. After police searched Green's residence and discovered a notebook with drawings of the address where the victims lived, Green admitted that he, Roland, and Jobe had formulated a plan to "scare" Jarmon. According to Green, Roland had said that Jarmon "needed to be

dealt with." Green said that the plan was for Jobe to hide behind a bush and fire rounds from a handgun into Jarmon's residence. Green told police that he stayed in his vehicle while Jobe approached the residence. Green heard gunfire and then saw the shed on fire. Jobe returned to Green's vehicle, and they fled the scene.

■ As part of a review of the nature of the offense, courts must necessarily consider the potential punishment permitted under the law. See Ex parte Rodriguez, 595 S.W.2d 549, 550 (Tex.Crim.App. [Panel Op.] 1980). In this case, the potential punishment for capital murder would be either by imprisonment for life without parole or by death. TEX. PENAL CODE ANN. § 12.31(a) (West Supp.2015).

Additionally, appellate courts often compare bail amounts in other cases involving offenses of the same degree. We note that relatively recent cases involving either capital murder or murder have upheld bail in a similar amount as that imposed in this case. See, e.g., Ex parte Lewis, No. 10–13–00448–CR, 2014 WL 2810629, at *1 (Tex.App.–Waco June 19, 2014, pet. ref'd) (mem. op., not designated for publication) ($1,000,000 bond for capital murder); Ex parte Green, No. 02–13–00474–CR, 2014 WL 584960, at *1 (Tex.App.–Fort Worth Feb. 13, 2014, no pet.) (mem. op., not designated for publication) ($1,000,000 for murder); Ex parte Guerra, 383 S.W.3d 229, 234 (Tex.App.–San Antonio 2012, no pet.) ($950,000 for indigent defendant charged with capital murder, aggravated robbery, and unauthorized use of a vehicle); Ex parte Gonzalez, 383 S.W.3d 160, 161 (Tex.App.–San Antonio 2012, pet. ref'd) ($1,500,000 for capital murder); Ex parte Jackson, 257 S.W.3d 520, 522–23 (Tex.App.–Texarkana 2008, no pet.) ($750,000 for defendant charged with capital murder); Ex parte Garcia, No. 09–06–543–CR, 2007 WL 846571, at *1 (Tex.App.–Beaumont Mar. 21, 2007, no pet.) (mem. op., not designated for publication) ($950,000 for murder).

■ Given the serious nature of capital murder, the circumstances surrounding the crime as alleged in this case, Jobe's potential sentence, the lack of evidence of any effort on Jobe's part to obtain a bond or of the ability of family and friends to help him do so, and the evidence that was presented at the hearing, we cannot hold that the trial court abused its discretion when it concluded that bail in the amount of $1,000,000 was reasonable. We overrule Jobe's sole issue on appeal.

The order of the trial court is affirmed.