

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00164-CR

———————————————

EX PARTE CARLTON JONES

---

On Appeal from the 432nd District Court
Tarrant County, Texas
Trial Court No. 1741762

---

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant Carlton Jones challenges the trial court's denial of the relief requested in his pretrial application for writ of habeas corpus. Jones had sought a reduction in his bail for the capital murder charge on which he is being held. In his sole issue, he argues that the trial court abused its discretion by setting his bond at $450,000 when the record does not reflect that the trial court referenced guiding rules or principles and when Jones (1) is eighteen years old; (2) has no criminal convictions; (3) has no money or assets; (4) has strong ties to the community; and (5) did not use, brandish, or discharge a firearm in the alleged criminal activity. Because we cannot conclude that the trial court abused its discretion by denying Jones's requested relief, we will affirm.

## Background

Jones was arrested in July 2022 and indicted the following month on charges of capital murder, murder, and aggravated robbery. The arrest warrant alleged the following facts. On June 30, 2022, Jones was among a group of four people who attempted to rob two men in a car. The men in the car met up with Jones's group in a parking lot to purchase a rifle. When Jones and another person in his group attempted to grab the money from one of the men in the car, the men in the car drove away, and two of the people in the group shot at the car, killing one of the car's occupants. Jones had been carrying one of the weapons used in the shooting, but he was not one of the

2

two shooters, and there was no allegation in the affidavit that Jones brandished or used a weapon during the incident.

The magistrate set Jones's bond at $500,000. In September 2022, Jones filed a combined motion to reduce his bond and application for writ of habeas corpus in which he asked the trial court to issue the writ, order a bond risk assessment, and conduct a hearing, or alternatively reduce the bond to a reasonable amount. At the hearing, Jones presented two witnesses: his adoptive mother, eighty-four-year-old Alcy Jimerson, and Jimerson's adult grandson, Dominick English. Jimerson testified that Jones has no assets—no bank account, no stocks, no vehicle, and no real property. Jimerson lives in an apartment and owns no property, and her only income is from Social Security and her "Teacher's Retirement," which she described as "not much." She had tried to obtain a bond, but she was told that she would have to put up "30 or $40,000," which she could not afford. English stated that the most that he could come up with for a bond was $5,000.

Jones was eighteen at the time of the offense. Jimerson testified that Jones has lived in Fort Worth all his life, has no close relatives anywhere else, and has no passport. English similarly testified that Jones had no place else to go because he did not know anyone outside of Fort Worth. Jones previously had a job at CTI Foods, which makes food for Taco Bell. Jones worked twelve-hour shifts, but he held that job for only about three months because of how physically taxing the job was for someone of his size. English stated that he has a supervisory position at the same

3

company and that Jones would be able to get a job with CTI again if he were released on bond.

Jimerson asserted that she and English would accept responsibility for getting Jones to court whenever the case had a setting. English testified that Jones had no juvenile history and that although Jones had a prior arrest in the previous year for evading arrest, he had not been convicted of that offense.

The trial court noted that it had not been provided with the "information as required under Senate Bill 6 . . . for [a judge] to lower a bond amount[, including] a PSA assessment." "Senate Bill 6" refers to the Damon Allen Act (the Act), legislation enacted in 2021 and codified in part in Articles 17.021 through 17.028 of the Texas Code of Criminal Procedure.[1] *See* Act of Aug. 31, 2021, 87th Leg., 2nd C.S., ch. 11, §§ 1, 5. The Act required the Office of Court Administration (OCA) to develop a "public safety report system" (PSRS) that, among other things, provides information about a defendant's criminal history, including information about the defendant's previous convictions, pending charges, and previous failures to appear in court after being released on bail. Tex. Code Crim. Ann. Proc. art. 17.021(a). A judge considering bail for a person charged with certain offenses must consider a report produced using

---

[1]The Act added Texas Code of Criminal Procedure Articles 17.021–.024, 17.027–.028, 17.0501, 17.071, and 17.51–.53 and amended Texas Code of Criminal Procedure Articles 1.07, 15.17, 17.02–.03, 17.15, 17.20, 17.22, and 66.102; Texas Government Code Sections 27.005, 71.0351, 72.038, and 411.083; and Texas Local Government Code Section 117.055. Act of Aug. 31, 2021, 87th Leg., 2nd C.S., ch. 11, §§ 1–25.

the PSRS. *Id.* arts. 17.022, 17.15(a). Because the trial court did not have that information at the hearing, the court took the matter under advisement to "see about getting the PSA completed if it hasn't been."

No order was signed on the application until June 2023.[2] The order reduced Jones's bail—but only to $450,000 rather than the $15,000–$25,000 requested by Jones.[3] The order further stated that the trial court had reviewed "PSA, the PSRS, and FTA information." The order did not explain to what the court referred by referencing "PSA, the PSRS, and FTA information" or state in the order what information those sources had revealed.

---

[2]In December 2022, Jones filed a motion requesting a ruling, but the trial court did not sign an order for another six months. The record does not explain the nine-month delay between the hearing and the order's signing.

[3]Whether we have jurisdiction over an appeal from a trial court's decision on a request to lower bail turns on whether the defendant requested the bail reduction in a motion or through an application for writ of habeas corpus. *Sanderson v. State*, Nos. 02-20-00006-CR, 02-20-00007-CR, 02-20-00009-CR, 2020 WL 827590, at *1 (Tex. App.—Fort Worth Feb. 20, 2020, no pet.) (per curiam) (mem. op., not designated for publication). This court has jurisdiction over the appeal from the denial of habeas relief, but we do not have jurisdiction over on appeal from the denial of a motion to reduce bond. *Ragston v. State*, 424 S.W.3d 49, 52 (Tex. Crim. App. 2014); *Sanderson*, 2020 WL 827590, at *1. Here, Jones filed both in a combined filing, and we read his brief as challenging only the denial of habeas relief. To the extent that Jones's issue also challenges the denial of his motion, we dismiss that part of his issue for lack of jurisdiction. *See Ragston*, 424 S.W.3d at 52. The State argues that we also have no jurisdiction over the disposition of Jones's habeas application because the trial court granted relief. But Jones asked the trial court to reduce his bond to between $15,000–$25,000, the maximum that he and his family could afford. In this case, the trial court's reducing the bond from $500,000 to $450,000 was still far beyond the amount requested by Jones and was effectively a denial of relief.

Jones filed an appeal from the denial of habeas relief. Jones also filed with the trial court a request for findings of fact and conclusions of law, but no findings and conclusions were filed by the trial court at that time.

### Findings of Fact and Conclusions of Law

The appellate record did not contain any public safety report or any other information that could be described as "PSA, the PSRS, and FTA information." After this court requested briefing in the appeal, the State asked the district clerk to supplement the record with the "PSA, the PSRS, and FTA information" that had been reviewed by the trial court. The clerk notified this court that those documents are not in the clerk's record.

It is this court's understanding that under OCA's policies for using the PSRS, when a court prepares a report using the system, the court must destroy the report within a short time after the report's preparation. This requirement means that the report may no longer exist by the time that an appellate record is requested by a party appealing the denial of habeas relief on bail, which may explain the lack of public safety report information in the appellate record in this case. Because the record did not contain the "PSA, the PSRS, [or] the FTA information"—and possibly could not contain that information, assuming any report to which those initials referred had been destroyed—this court was "left in the undesirable position of having to make assumptions about the reasons for the trial court's decision." *State v. Cullen*, 195 S.W.3d 696, 698 (Tex. Crim. App. 2006) (citing Texas Rule of Appellate

6

Procedure 44.4 in the context of reviewing a ruling on a motion to suppress); *Scheideman v. State*, 413 S.W.3d 439, 441 (Tex. App.—Fort Worth 2011, no pet.) (citing *Cullen*). Accordingly, this court abated the appeal for the trial court to make findings of fact and conclusions of law. *See Cullen*, 195 S.W.3d at 698. Upon receiving the trial court's findings and conclusions, this court reinstated the appeal.

Those findings and conclusions included the following findings:

14. The information produced by the PSRS showed that Jones, who was 18 at the time of his July 2022 arrest, had four pending charges: murder, capital murder, aggravated robbery, and evading arrest or detention.

15. The evading charge had occurred on March 12, 2021. Jones initially was released on a personal bond with conditions. Thereafter, **Jones failed to appear for court and violated a bond condition**, resulting in his bond (which had later been increased to $750) being held insufficient with an arrest warrant issued shortly before the murder occurred. [Emphasis added.]

16. The public safety assessment (PSA) is a tool used to assess the likelihood a defendant will appear in court and remain arrest-free while on pretrial release. Jones's scaled score on a scale of 1 to 6 was a 3.

17. In 2021, Jones had been arrested for unauthorized use of a motor vehicle which was not prosecuted.

The trial court also made the following conclusions:

22. By all accounts, Jones cannot afford bail in anything but a relatively low amount. English seemed to suggest Jones's family could satisfy a $50,000 bail, assuming a bondsman would accept 10%, and Jones asked for an approximately $25,000 bail amount.

23. The violent, public nature of the charged offenses raised a generalized concern for community safety. This Court has no evidence regarding the safety of the surviving victim.

24. Jones has a prior arrest for unauthorized use of a motor vehicle, which was not prosecuted, and a pending evading-arrest-or-detention charge. As discussed, Jones previously violated bond conditions and failed to appear for court regarding his misdemeanor evading charge, a charge with much less serious consequences than Jones now faces. Although Jimerson testified that she and English would ensure Jones appeared for court, this safety net failed before. And English's testimony that Jones could comply with bond conditions was not credible given Jones's previous failure to do so.

. . . .

27. Based on the nature and circumstances of the instant offenses, the severity of the possible punishments, Jones's prior failure to appear or comply with bond conditions, and a concern for public safety, this Court concluded that a high bond, yet one less than $500,000, was necessary to ensure that the undertaking will be complied with. *See, e.g.,* [*Ex Parte*] *Cardenas*, 557 S.W.3d [722,] 731–35[ Tex. App.—Corpus Christi–Edinburg 2018, no pet.)]; *Jobe v. State*, 482 S.W.3d 300, 303–04 (Tex. App.—Eastland 2016, pet. ref'd); *Ex parte Guerra*, 383 S.W.3d 229, 233–34 (Tex. App.—San Antonio 2012, no pet.). These factors weighed heavier for this Court than the facts that neither Jones nor his family can afford a high bail, he has lived here his entire life, and his family is in the area.

## Discussion

### I. Applicable law and standard of review

We review the trial court's decision in setting a bail amount for an abuse of discretion, viewing the evidence in the light most favorable to the trial court's ruling. *Ex parte Gomez,* 624 S.W.3d 573, 576 (Tex. Crim. App. 2021). We will not disturb the decision if it was within the zone of reasonable disagreement. *Ex parte Estrada,* 640 S.W.3d 246, 256 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). The accused has the burden to show that the bail amount is excessive. *Gomez,* 624 S.W.3d at 576.

Bail's primary purpose is to assure the defendant's presence for trial. *See* Tex. Code Crim. Proc. Ann. art. 17.01; *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977). In setting bail, the trial court balances the defendant's presumption of innocence and the State's interest in assuring the defendant's presence at trial. *See Ex parte Simpson*, 77 S.W.3d 894, 896 (Tex. App.—Tyler 2002, no pet.) (per curiam); *Ex parte Brown*, 959 S.W.2d 369, 371 (Tex. App.—Fort Worth 1998, no pet.).

The court's discretion in setting a bail amount is governed by the following statutory criteria:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be used as to make bail an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered, including whether the offense: (A) is an offense involving violence as defined by [Texas Code of Criminal Procedure Article 17.03]; or (B) involves violence directed against a peace officer.

4. The ability to make bail shall be considered, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense, law enforcement, and the community shall be considered.

6. The criminal history record information for the defendant, including information obtained through the statewide telecommunications system maintained by the Department of Public Safety and through the public safety report system developed under Article 17.021, shall be considered, including any acts of family violence, other pending criminal charges, and any instances in which the defendant failed to appear in court following release on bail.

7. The citizenship status of the defendant shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15. Other circumstances to be considered include the accused's work record, family and community ties, length of residency, prior criminal record, and conformity with the conditions of any previous bond, as well as the existence of any outstanding bonds and aggravating circumstances involved in the charged offense. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981).

A defendant's inability to meet the bail set by the trial court does not automatically make the bail amount excessive; "[i]f the ability to make bond in a specified amount controlled, then the role of the trial court in setting bond would be completely eliminated, and the accused would be in the unique posture of determining what his bond should be." *Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.) (quoting *Ex parte Miller*, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref'd)). Thus, the fact that a defendant cannot afford bail does not automatically make the bail excessive. *See Estrada*, 640 S.W.3d at 255 (stating that evidence of "enormous gap" between what bail appellant's family said they could afford and what bail the court had set favored reduction in bail but that that factor did not demonstrate that the bail was excessive). However, as noted, "[t]he power to require bail is not to be used to make bail an instrument of oppression." Tex. Code Crim. Proc. Ann. art. 17.15.

A defendant's criminal history can in some cases suggest that the defendant would be a danger to the public if released on bail. *See, e.g.*, *Ex parte Lovell*, No. 12-21-

10

00206-CR, 2022 WL 598683, at \*3 (Tex. App.—Tyler Feb. 28, 2022, no pet.) (mem. op, not designated for publication). The nature of the offense with which the defendant is currently charged and the possible sentence are the "primary factors" we consider in evaluating a bail decision. *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pets. ref'd).

## II. Application

In consideration of the hearing testimony regarding the financial condition of Jones and his family, the trial court lowered the bail amount that had been set by the magistrate. However, the undisputed testimony shows that Jones still cannot afford bail at the lower amount set by the trial court. The testimony was also undisputed that Jones has lived in Fort Worth his entire life, that he has no connections outside of Fort Worth, and that he has no passport. The fact that his only family lives in Fort Worth gives him "'an incentive to remain despite the possibility of conviction and sentence.'" *Ex parte Briscoe*, No. 02-15-00223-CR, 2015 WL 5893470, at \*5 (Tex. App.—Fort Worth Oct. 8, 2015, no pet.) (mem. op., not designated for publication) (quoting 41 George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice & Procedure* § 21:30 (3d ed. 2011)). On the other hand, Jones had no job at the time of his arrest, and although his cousin believed that Jones could get his old job back at CTI Foods, he had previously worked at that job for only three months. There was no evidence of any other work history, which is not surprising given Jones's age, but as a result, Jones could not rely on his work history to give the court

assurance that he would appear. *See Richardson v. State*, 181 S.W.3d 756, 759 (Tex. App.—Waco 2005, no pet.) (noting that "[a] defendant's ties to the community and work history bear on the adequacy of bail to give reasonable assurance he will appear.").

Jones is charged with multiple violent offenses. There is no allegation in the record that Jones used the weapon that was used to cause the death in this case. However, he allegedly carried the weapon to the scene, and he allegedly participated in the attempted robbery. As for the punishment he faces, if convicted of murder or aggravated robbery, Jones faces the possibility of life imprisonment. *See* Tex. Penal Code Ann. § 12.32 (setting out first-degree felony punishment range), § 19.02 (making murder a first-degree felony), § 29.03 (making aggravated robbery a first-degree felony). If convicted of capital murder, Jones would receive a mandatory punishment of life without parole. *See id.* § 12.31; *Scott*, 122 S.W.3d at 869 (stating that when a defendant faces a lengthy sentence, "pretrial bond must be set sufficiently high to secure the presence of the accused at trial because the accused's reaction to the prospect of a lengthy sentence might be to not appear").

Further, the public safety report confirmed English's testimony that Jones had been arrested the year before for evading detention. Importantly, the report further revealed that when Jones had been released on personal bond for that relatively minor charge, he violated a bond condition and failed to appear for court, leading to an arrest warrant being issued. *See Ex parte Brown*, No. 14-21-00348-CR,

12

2021 WL 4999091, at *3 (Tex. App.—Houston [14th Dist.] Oct. 28, 2021, pet. ref'd) (mem. op., not designated for publication) ("Given that appellant has failed to appear when charged with lesser offenses, it was not unreasonable for the trial court to conclude appellant is a flight risk."). Thus, Jones's family and community ties have already been shown to be insufficient to assure Jones's presence in court. His previous violation of a bond condition and his failure to appear, the nature of the offenses with which he is charged, and the potential for a lengthy sentence support the trial court's decision.

Given the balance of the factors discussed above, we cannot conclude that the trial court abused its discretion by denying Jones's request to reduce his bond to $15,000–$25,000. We overrule Jones's sole issue.

## Conclusion

Having overruled Jones's sole issue, we affirm.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: November 9, 2023

13