**Mario MORA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–89–148–CR.**

Court of Appeals of Texas,
Corpus Christi.

May 31, 1989.

Rolando R. Ramirez, Alice, for appellant.

Ben Euresti, Jr., County Crim. Dist. Atty., Brownsville, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

OPINION

NYE, Chief Justice.

This is an appeal from an order of the 197th District Court of Cameron County, entered following a hearing on appellant's writ of habeas corpus, refusing appellant's request for a reduction of bail pending trial.

Prior to being indicted for the murder of his wife, appellant was arrested and bail was set at $200,000. After a hearing, bail was reduced to $50,000. Appellant procured a surety bond for this amount. Subsequently, appellant was indicted for the offense of murder for the death of his wife. Bail was then set at $100,000. Appellant sought habeas corpus relief; the trial court after hearing evidence denied his motion. He is now in custody in Cameron County. We conclude that the trial court did not abuse its discretion.

The primary purpose of bail is to secure the presence of the defendant. *Ex parte Vasquez*, 558 S.W.2d 477 (Tex.Crim.App. 1977). The setting of bail is a matter within the trial court's discretion, and it is defendant's burden to show that bail is excessive. *Ex Parte Vasquez*, 558 S.W.2d at 479; *McCartin v. State*, 666 S.W.2d 170 (Tex.App.—Corpus Christi 1983, no pet.).

In the exercise of its discretion, the court is to be governed by the following rules:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.
2. The power to require bail is not to be so used as to make it an instrument of oppression.
3. The nature of the offense and the circumstances under which it was committed are to be considered.
4. The ability to make bail is to be regarded....
5. The future safety of a victim of the alleged offense may be considered.

Tex.Code Crim.Proc.Ann. art. 17.15 (Vernon Supp.1989).

■ Other factors to be considered in determining the amount of bail include family ties, residency, ability to make bond, aggravating factors involved in the offense, the defendant's work history, prior criminal record, and previous and outstanding bonds. *Ex parte Rubac*, 611 S.W.2d 848, 849 (Tex.Crim.App.1981); *Ex parte Welch*, 729 S.W.2d 306, 309 (Tex.App.—Dallas 1987, no pet.).

■ Appellant contends that the bail is excessive because the evidence showed that he had no criminal record; that he met all the conditions of the previous bail bond; that he had not tried to escape; and that it was established he could not make the bond for more than $50,000. He refers us to two murder cases where the Court of Criminal Appeals has reduced bail. In *Ex Parte Hellenguard*, 622 S.W.2d 875 (Tex. Crim.App.1981), bail was set at $25,000 when the defendant was arrested and then raised to $100,000 when he was indicted. The court looked at all the evidence and circumstances, including that the defendant voluntarily surrendered to the sheriff, had no criminal record, had a life long residency of the area, and was indigent. The court held that the bond was excessive and reduced it to $25,000. In a similar case, *Ex Parte Walton*, 583 S.W.2d 786 (Tex.Crim. App.1979), where the defendant was only 19 years of age, surrendered, confessed and had a life-long residency in the county with ties to the community, no prior convic-

tions and was indigent, the bond was reduced from $25,000 to $15,000. Besides the fact that the value of the dollar has decreased since 1981, appellant's circumstances are unlike those cases because appellant did not confess or surrender, nor is he a life-long resident of the county where the charges are pending.

The evidence at the hearing under review, revealed that appellant is not a resident of Cameron County, where the charges are pending, but lives in Alice, Jim Wells County, Texas. He had lived in Jim Wells County most of his life, except from 1983–87 when he was in the military. He had only spent approximately six months of his life in Cameron County, but had no relatives in Cameron County. He has continued to live at the same address in Jim Wells County where he has been living with his mother and his two children since the arrest. The maximum punishment appellant faces is life imprisonment or ninety years and a $10,000 fine.

Appellant has a college degree, was in the military, was honorably discharged, worked for the school district for four months, but is not now currently employed. He had no previous criminal arrests or convictions. He was, however, investigated for committing the offense of arson in Alice. The evidence showed that he has never tried to escape and had kept in contact with his bondsman.

Appellant testified about his financial situation. He said he could not make the $100,000 bail, that he had tried to borrow the money and was unsuccessful, and that his family had helped him make the $50,000 bail. He testified that he has a car, a motorcycle, interest in a home, and retirement money accumulated after working for four months, but that these assets were tied up in his wife's estate. Appellant's mother testified that the house she lived in was used in a promissory note to pay attorney's fees and that although she had part interest in two other pieces of property no money was available from the other property because it could not be sold and her brother owned part of it. She testified also that she was paying the attorney $250.00 a

month from money she makes from a business she runs in her home.

At the habeas corpus hearing, the State, without objection, summarized the circumstances of the crime the State expected its witnesses to reveal. The State expected the evidence to show that appellant had been violent to his wife, and that he and his wife had marital problems stemming from an affair appellant was having with his secretary. The evidence would also show that his wife was found nude in a jeep with two shots to her head. The State expected the girlfriend to testify that appellant called her to pick him up on the night of the shooting. She picked him up near the area where the body was found. The evidence also would show that appellant threw the gun he used in the bay.

In somewhat similar cases the amount of $100,000 bail has been upheld. *In Ex parte Miller*, 631 S.W.2d 825 (Tex.App.—Fort Worth 1982, pet. ref'd) the court affirmed bond set for $100,000 in a murder case after considering the extreme nature of the violent act, the punishment and the failure of accused to show he could not make bail. In *O'Neill v. State*, 635 S.W.2d 166 (Tex.App.—Houston [1st Dist.] 1982, no pet.) the court affirmed bond in the amount of $100,000 for a first degree felony of aggravated sexual abuse of a child where the defendant had lived in the county for only five months and had no family ties. And in an aggravated possession of marihuana case, bail was reduced from $500,000 to $100,000 although the evidence showed that appellant only had $200 month income and no financial resources. *Tonjes v. State*, 627 S.W.2d 814 (Tex.App.—Tyler 1980, pet. ref'd). In *Ex parte Goosby*, 685 S.W.2d 440 (Tex.App.—Houston [1st Dist.] 1985, no pet.) a capital murder bond was reduced from $250,000 to $100,000 even though the defendant had no prior convictions and the evidence showed he could not pay it partly because he had no property in the state and had been a previous resident of numerous states.

Taking into consideration that appellant had two children from his deceased wife, that his girlfriend had incriminating evidence, that the crime was of an extremely violent nature, that appellant does not live in the county where charges are pending and has no ties with anyone in that area, that the maximum punishment he is facing is life and a $10,000 fine, and that he is not indigent, we conclude that the trial court did not abuse its discretion in setting bond at $100,000.