**Guillermo MONTALVO, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–09–01134–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

April 29, 2010.

Tony Aninao, Houston, TX, for Appellant.

Eric Kugler, Assistant District Attorney of Harris County, Patricia R. Lykos, Harris County District Attorney, Houston, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

MICHAEL MASSENGALE, Justice.

Appellant Guillermo Montalvo has been charged with murder (trial court cause number 1237568). *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 2003). His pretrial bail was originally set at $50,000, and he filed a habeas corpus petition (trial court cause number 1242494) complaining that the bail was excessive and seeking a reduction of the bail to $5,000. *See* TEX.CODE CRIM. PROC. art. 11.24 (Vernon 2005). After a hearing, the trial court increased Montalvo's bail to $100,000. Montalvo appeals from this decision and asks that his bail be reduced to $10,000. *See* TEX.R.APP. P. 31. He also asks that we order the trial court to reinstate attorney Tony Aninao as his appointed counsel of record.

We affirm the trial court's ruling on the amount of Montalvo's bail. We lack jurisdiction over Montalvo's complaint about the withdrawal of his original appointed counsel and appointment of new counsel.

### Factual and Procedural Background

On October 18, 2009, appellant Guillermo Montalvo was charged in Harris County with one count of murder.[1] The State alleged that on or about October 5, 2009, Montalvo "did then and there unlawfully intentionally and knowingly cause the death of MELVIN SANCHEZ ... by STABBING THE COMPLAINANT WITH A KNIFE." The case was assigned to the 183rd District Court, and bail was set at $50,000. Two days later, Montalvo represented to the trial court that he

---

1. Three Montalvo brothers have been identified as suspects involved with the crime. Unless otherwise required by context, references to "Montalvo" in this opinion refer to appellant Guillermo Montalvo.

was financially unable to hire an attorney, and attorney Tony Aninao was appointed to represent him. After the appointment of Aninao, Montalvo's case was transferred to the 208th District Court, where a companion case was pending against another defendant also charged with complicity in the murder of Melvin Sanchez.

On November 20, 2009, Montalvo filed an original application for a writ of habeas corpus. In that application, he alleged that he is a United States citizen and a resident of Harris County. He claimed that he was willing and able to post a bond in an amount sufficient to ensure his presence before the trial court to answer the pending charges. He alleged that the amount of bail previously set by the trial court violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution; Article I, sections 11, 11A, and 13 of the Texas Constitution; and Articles 17.031, 17.15, 17.151, and 17.21 of the Texas Code of Criminal Procedure.

On December 10, 2009, the trial court held a hearing on Montalvo's petition for habeas corpus.[2] The State presented one witness, police officer H.A. Chavez. Officer Chavez testified that he had investigated a homicide that took place on October 5, 2009, at a nightclub in Harris County.

Two men entered a restroom, and four men followed them. A brawl ensued, and the first two men were punched, kicked, and stabbed. One man, Melvin Sanchez, died as a result of his wounds. The four suspects identified as a result of the investigation were Montalvo, his brothers Alfonso (a/k/a "Paco") and Richard, and Erick Dono. The four suspects were seen dragging Sanchez out of the restroom and fleeing the scene. Officer Chavez identified Montalvo as a participant in the assault, and he also testified that Paco was suspected of actually stabbing the two victims. One witness reported to Officer Chavez that Montalvo bragged about beating one of the men with a toilet cover.

According to Officer Chavez, after the incident Montalvo and his brothers fled to Mexico. As of the time of the hearing, Montalvo's brothers had not been found. Montalvo, in contrast, while still in Mexico had contacted a police officer, and ultimately he voluntarily returned to Houston and gave a statement. In his statement, Montalvo conceded that he had gone to the nightclub so that his brother could fight one of the victims, he knew his brother carried a knife, and he participated in the fight while high on cocaine.

Montalvo also testified at the hearing. He testified that he was born in Houston

---

**2.** By describing the evidence offered at the hearing, we express no opinion on the admissibility of any of this evidence in future proceedings in the case. *See, e.g.,* TEX.R. EVID. 101(d)(1)(E) ("These rules, except with respect to privileges, do not apply in ... proceedings regarding bail except hearings to deny, revoke or increase bail...."); *Garcia v. State,* 775 S.W.2d 879, 880 (Tex.App.-San Antonio 1989, no pet.) (hearsay rule did not apply in habeas corpus proceeding in which reduction of bail was sought); 41 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 16.15 (2d ed. 2001) ("Such habeas proceedings are undoubtedly '[p]roceedings regarding bail,' and since they are not within the explicit and

limited exceptions of Rule 101(d)(1)(E), the Rules appear not to apply."). *But see Ex parte Graves,* 853 S.W.2d 701, 703–04 (Tex. App.-Houston [1st Dist.] 1993, pet. ref'd) ("The Texas Rules of Criminal Evidence apply in both habeas corpus hearings and proceedings to deny bail." (citing *Garcia,* 775 S.W.2d at 881)). Moreover, we offer no view on the weight of any evidence discussed herein as it may relate to any future proceedings. *See Ex parte Paul,* 420 S.W.2d 956, 957 (Tex.Crim. App.1967) (noting policy in habeas corpus appeals relating to bail "to refrain from stating the facts at length and of expressing a conclusion as to the sufficiency of the evidence to show the defendant's guilt" in order to avoid prejudgment by appellate courts).

and that he is a United States citizen. He testified that he has lived in the Houston area his entire life and all of his relatives live, or have previously lived, in the Houston area. He further testified that he was 20 years old, that he had two daughters and was expecting the births of two more children, and that he was then separated from the mother of his children.

Montalvo testified that after fleeing the crime scene, he stayed for two or three days in Reynosa, Mexico and then stayed with a sister-in-law in Ciudad Miguel Alemán. After contacting the police by telephone, he crossed the border back into the United States by swimming across the Rio Grande River to avoid immigration officials. He subsequently surrendered to the police because he had not stabbed either of the victims, he was tired of running, and he wanted to clear his name.

With respect to his work history, Montalvo testified that he attended, but did not complete, training to become a computer technician. He testified that he did not complete his course of study because he "got locked up." He also testified that he had worked for "at least a month" doing grinding for Spitzer Industries, and he was employed for approximately two weeks providing security for a construction company.

Montalvo testified that he had misdemeanor convictions as an adult for failure to produce identification to a police officer and burglary of a motor vehicle. In March 2009, Montalvo posted a bond in connection with the burglary charge, and he ultimately forfeited on the bond. He served 10 days in jail in for the failure-to-identify conviction, and 150 days for the burglary conviction. In addition, Montalvo admitted on cross-examination that he had been sent to the Texas Youth Commission for the juvenile offense of unauthorized use of a motor vehicle and that on one occasion he had run away from the Texas Youth Commission.

With respect to bail, which had been initially set at $50,000 for the murder charge, Montalvo testified that he had tried unsuccessfully to obtain a bond. His understanding was that he needed $5,000 cash collateral and a co-signor to obtain the bond. He testified that he had approximately $2,000 in cash that he could use to obtain a bond. He did not have a checking or savings account, but he did own an eight-year-old sports utility vehicle. He owned no jewelry, stocks, bonds, or real estate that could be used to raise money to obtain a bond. Montalvo asked the trial court to grant a reduction in bail to a range of $10,000–$15,000. He agreed to consent to electronic monitoring and urine tests pending trial of his case.

After the testimony of the two witnesses, the State argued that Montalvo's bail had been set too low. The State argued that he was charged with a violent crime, he had forfeited on a bond in the past, and he had family contacts in Mexico, where he had fled after the incident at issue. He had previously evaded law enforcement while crossing the United States–Mexico border. Based on these factors, the State argued that bail of $200,000 would be more appropriate.

Montalvo argued after the conclusion of testimony that a reduction of bail to $20,000 would be appropriate because that was approximately what he had testified he could satisfy. He argued that bail of $20,000, in addition to other conditions such as electronic monitoring, would be sufficiently high to assure that he complied with the undertaking. He also argued that bail should not be used as an instrument of oppression. As mitigating factors, he asserted that he had not been the person who stabbed any victim, that there was no evidence of an advance plan to kill

Sanchez, and that he had voluntarily returned to surrender after initially fleeing.

The trial court denied habeas corpus relief and also denied Montalvo's request to reduce bail. The trial court increased his bail to $100,000 and certified his right to appeal. A notice of appeal was filed on December 10, 2009, and Aninao was appointed as Montalvo's counsel on appeal.

On December 14, 2009, Aninao filed in the trial court a motion to withdraw as attorney of record. The motion stated that the reason for the request was that the trial court "informed undersigned appointed counsel to withdraw since court wanted to appoint another lawyer." On the same day the trial court granted the motion.

## Standard of Review

The Eighth Amendment to the United States Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII; *Schilb v. Kuebel*, 404 U.S. 357, 365, 92 S.Ct. 479, 484, 30 L.Ed.2d 502 (1971) (applying Eighth Amendment prohibition of excessive bail to the States).[3] The standard for reviewing whether excessive bail has been set is whether the trial court abused its discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex.Crim. App.1981) (reviewing bail pending appeal for abuse of discretion); *Cooley v. State*,

232 S.W.3d 228, 233 (Tex.App.-Houston [1st Dist.] 2007, no pet.). In the exercise of its discretion, a trial court should consider the following factors in setting a defendant's bail before trial:

1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be so used as to make it an instrument of oppression.

3. The nature of the offense and the circumstances under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and proof may be taken upon this point.

5. The future safety of a victim of the alleged offense and the community shall be considered.

Tex.Code Crim. Proc. Ann. art. 17.15 (Vernon 2005); *see Ludwig v. State*, 812 S.W.2d 323, 324 (Tex.Crim.App.1991). A defendant carries the burden of proof to establish that bail is excessive. *Ex parte Rubac*, 611 S.W.2d at 849; *In re Hulin*, 31 S.W.3d 754, 759 (Tex.App.-Houston [1st Dist.] 2000, no pet.). In reviewing a trial court's ruling for an abuse of discretion, an appellate court will not intercede as long as the trial court's ruling is at least within the zone of reasonable disagreement. *Cooley*, 232 S.W.3d at 234; *Ex parte Beard*, 92 S.W.3d 566, 573 (Tex.App.-Austin 2002, pet. ref'd) (citing *Montgomery v.*

3. The Bill of Rights contained within the Texas Constitution provides that "All prisoners shall be bailable by sufficient sureties, unless for capital offenses, when the proof is evident; but this provision shall not be so construed as to prevent bail after indictment found upon examination of the evidence, in such manner as may be prescribed by law." Tex. Const. art. I, § 11. The Texas Bill of Rights further specifies that "Excessive bail shall not be required...." *Id.*, art. I, § 13. Montalvo alleged in the trial court that his bail violated

his rights under Article I, sections 11, 11A, and 13 of the Texas Constitution and Articles 17.031, 17.15, 17.151, and 17.21 of the Texas Code of Criminal Procedure. In his briefing on appeal, however, Montalvo has not offered separate argument or authorities to support a separate analysis on state constitutional grounds, and any such grounds are accordingly waived. *See* Tex.R.App P. 38.1(i); *Heitman v. State*, 815 S.W.2d 681, 690 n. 23 (Tex.Crim.App.1991).

*State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)). We acknowledge, however, that an abuse-of-discretion review requires more of the appellate court than simply deciding that the trial court did not rule arbitrarily or capriciously. *Cooley,* 232 S.W.3d at 234. The appellate court must instead measure the trial court's ruling against the relevant criteria by which the ruling was made. *Id.*

## Analysis

### I. Bail

 The primary purpose for setting bail is to secure the presence of the defendant in court at his trial. *Ex parte Vasquez,* 558 S.W.2d 477, 479 (Tex.Crim.App. 1977); *Golden v. State,* 288 S.W.3d 516, 519 (Tex.App.-Houston [1st Dist.] 2009, pet. ref'd). The amount of bail should be set sufficiently high to give reasonable assurance that the accused will comply with the undertaking, but should not be set so high as to be an instrument of oppression. *Ex parte Bufkin,* 553 S.W.2d 116, 118 (Tex.Crim.App.1977); *Ex parte Willman,* 695 S.W.2d 752, 753 (Tex.App.-Houston [1st Dist.] 1985, no pet.). Courts should also consider the defendant's work record, family ties, residency, criminal record, conformity with previous bond conditions and aggravating factors involved in the offense. *See Ex parte Rubac,* 611 S.W.2d at 849.

#### Sufficiency of bail

 As Montalvo is complaining that bail of $100,000 is excessive, and the State has not appealed from the trial court's rejection of the State's suggestion to set bail at a higher amount, there is no dispute that the bail set by the trial court is sufficiently high to give reasonable assurance that Montalvo would comply with the undertaking of appearing in court as required in the future.

#### Nature and circumstances of the offense

Montalvo has been charged with murder, a first-degree felony offense. TEX. PENAL CODE ANN. § 19.02 (Vernon 2003). Our consideration of the nature and circumstances of the offense requires that we take note of the range of punishment permitted by law in the event of a conviction. *See, e.g., Ex parte Rodriguez,* 595 S.W.2d 549, 550 (Tex.Crim.App.1980); *Ex parte Reyes,* 4 S.W.3d 353, 355 (Tex.App.-Houston [1st Dist.] 1999, no pet.). In this case, the potential unenhanced punishment for murder ranges from 5 to 99 years or life in prison. TEX. PENAL CODE ANN. § 12.32 (Vernon Supp.2009).

Murder is an unquestionably serious offense, and bail set in the amount of $100,000 or more in non-capital murder cases has been routinely affirmed by courts of appeals. *See, e.g., Milner v. State,* 263 S.W.3d 146, 148–51 (Tex.App.-Houston [1st Dist.] 2006, no pet.) (affirming $500,000 bail for defendant accused of murdering his wife and attempting to murder his mother-in-law); *Richardson v. State,* 181 S.W.3d 756, 758–60 (Tex.App.-Waco 2005) (affirming $200,000 bail for defendant accused of killing her husband).[4]

---

4. Our review of results in recent unpublished cases also supports this conclusion. *See Sherman v. State,* No. 01–06–00466–CR, 2007 WL 54806 (Tex.App.-Houston [1st Dist.] Jan. 9, 2007, no pet.) (mem. op. not designated for publication) (affirming $250,000 bail for murder charge); *Haynes v. State,* No. 11–09–00135–CR, 2009 WL 2403569 (Tex.App.-Eastland Aug. 6, 2009, no pet.) (mem. op. not designated for publication) (affirming $500,000 bail for murder charge involving a drive-by shooting); *Ex parte Wilson,* No. 04–08–00553–CR, 2009 WL 330994 (Tex.App.-San Antonio Feb. 11, 2009, no pet.) (mem. op. not designated for publication) (affirming $200,000 bail when defendant charged with murder by stabbing during fight provoked by defendant); *Ex parte McBride,* No. 12–07–00241–CR, 2007 WL 4216370 (Tex.App.-Tyler Nov. 30, 2007, no pet.) (mem. op. not desig-

Most of these cases, however—including all of the authorities submitted by the State[5]—are at least partially distinguishable from Montalvo's case insofar they involved bail assessed for defendants accused of directly committing murder, and as the evidence presented at the habeas corpus hearing suggests that Montalvo did not personally stab the murder victim in this case. Instead, the evidence offered against Montalvo supports a charge of murder based only on his actions to assist and encourage the murder of Sanchez. This evidence included Montalvo's awareness of his brother's intention to fight Sanchez at the night club, his awareness that his brother carried a knife, his presence during the assault, his bragging that he beat one of the victims with a toilet cover, and his flight afterwards. (Based upon this evidence, along with Montalvo's admission that he was high on cocaine during the assault, we reject Montalvo's suggestion that the evidence against him presented by the State is so weak that bail should be reduced based on the likelihood of acquittal.)

We must take into account the allegations of Montalvo's indirect role in the stabbing as part of the nature and circumstances of the alleged offense. However, we must also acknowledge that under the law of parties, if Montalvo acted with the intent to promote or assist the commission of the offense by encouraging, aiding, or attempting to aid another person in committing the offense, he is just as criminally responsible for the offense as if he had directly committed murder by his own conduct. *See* TEX. PENAL CODE ANN. §§ 7.01(a), 7.02(a)(2) (Vernon 2003).

A similar circumstance was presented in *Ex parte Davis*, 147 S.W.3d 546 (Tex.App.-Waco 2004, no pet.), in which the two brothers Davis were charged with murder. Pretrial bail was set at $1,000,000 for each of the brothers. At an evidentiary hearing on the brothers' habeas corpus petition to reduce bail, the evidence showed that the two brothers were cocaine dealers and that Chad Davis hired three men to assault the murder victim, who had "ripped off the [Davises] for $100,000 worth of drugs and/or money." *Davis*, 147 S.W.3d at 549. When the victim was confronted, a gun battle ensued and the victim was killed. The evidence adduced by the State identified Chad as the "primary instigator of the whole transaction." *Id.* at 550. The only

---

nated for publication) (affirming $250,000 bail for murder charge in which victim was shot in the back eight times). Bail of less than $100,000 for a murder charge has also been approved by courts of appeals in some circumstances. *See, e.g., Contreras v. State*, No. 07-04-0085-CR, 2004 WL 2578102 (Tex. App.-Amarillo Nov. 12, 2004, no pet.) (mem. op. not designated for publication) (affirming trial court's reduction of pretrial bail in from $200,000 to $50,000); *Ex parte Gomez*, No. 08-01-00321-CR, 2001 WL 1654978, at *3 (Tex.App.-El Paso Dec. 27, 2001, no pet.) (mem. op. not designated for publication) (reducing bail from $100,000 to $50,000 for mother charged with murder by abandoning newborn child).

5. The State provided three case citations as support for the reasonableness of $100,000

bail in this murder case. One of those cases, *Hughes v. State*, 843 S.W.2d 236 (Tex.App.-Houston [14th Dist.] 1992, no pet.), is not comparable because it involved post-trial bail in a case in which the defendant was convicted of shooting his girlfriend between the eyes. In the other two cases, both of which involved pre-trial bail for a charge of murder, the defendant was a lone actor who was accused of directly committing an act of murder. *See Eggleston v. State*, 917 S.W.2d 100, 101–03 (Tex.App.-San Antonio 1996, no pet.) (bail reduced from $1,000,000 to $300,000 when defendant was accused of beating his child to death); *Mora v. State*, 773 S.W.2d 629 (Tex. App.-Corpus Christi 1989, no pet.) ($100,000 bail affirmed when defendant was accused of murdering wife by shooting her in head).

evidence referenced by the court of appeals about the other brother, Trey, suggested that he was "perhaps" involved in hiring the hitmen and that he "knowingly participated in the events leading up the murder and knowingly assisted the assailants as they fled the state." *Id.* In reviewing Trey's bail, which the trial court had set at $1,000,000, the Waco Court of Appeals considered, among other mitigating factors, the fact that the evidence suggested that Trey did not directly commit the murder. *Id.* at 553. However, in reducing Trey's bail to $500,000, the court also noted that the evidence suggested that Trey knowingly participated in the plot that resulted in murder. *Id.* Similarly, in Montalvo's case we note that the information presented at the habeas corpus hearing suggests he did not personally stab the murder victim, but that he nevertheless may have knowingly participated in the offense.

As an additional circumstance of the offense of murder, Montalvo argues that his voluntary surrender is a factor that should be considered in lowering his bail. The evidence presented at the hearing suggested that Montalvo voluntarily returned to the United States after initially fleeing to Mexico. We acknowledge Montalvo's voluntary surrender as a factor favoring a reduction of bail. *See, e.g., Ex parte Hellenguard,* 622 S.W.2d 875, 875 (Tex.Crim. App.1981); *Ex parte Walton,* 583 S.W.2d 786 (Tex.Crim.App.1979).

### Future safety of victims and the community

The parties do not directly address the future safety of the victims and the community. Sanchez is dead, so there is no issue of his future safety. There was no evidence at the hearing on Montalvo's petition to suggest that Montalvo presents any direct threat to the other assault victim or to the families of the victims. Neverthe-

less, we assume, as we must, that the trial court considered these factors in assessing bail. *See* TEX.CODE CRIM. PROC. ANN. art. 56.02(a)(2) (Vernon Supp.2009) ("A victim, guardian of a victim, or close relative of a deceased victim is entitled to ... the right to have the magistrate take the safety of the victim or his family into consideration as an element in fixing the amount of bail for the accused").

### Ability to make bail

Montalvo testified that he did not have the resources available to post a bond in the amount of $50,000 or more. He testified about the amount of cash available to him, his ownership of a vehicle, and his lack of other valuable property. No evidence was presented about any discussions with bondsmen or the maximum amount of bail that Montalvo believed he could satisfy. Similarly, no evidence was presented about whether Montalvo's family had any ability to help him make bail. *See Milner,* 263 S.W.3d at 149 ("To show that he is unable to make bail, a defendant generally must show that his funds and his family's funds have been exhausted."). Based on his attorney's arguments to the trial court, it appears that Montalvo possibly could make bail of as much as $20,000.

The Code of Criminal Procedure requires the trial court to consider the defendant's ability to make bail. TEX.CODE CRIM. PROC. ANN. art. 17.15(4) (Vernon 2005). However, the Court of Criminal Appeals has emphasized that ability or inability to make bail does not, alone, control in determining the amount. *See Ex parte Rodriguez,* 595 S.W.2d at 550; *Ex parte Bufkin,* 553 S.W.2d at 118. The unrebutted evidence of Montalvo's inability to make bail of $100,000 is a factor in favor of reducing his bail, but that factor did not require the trial court to set bail at an amount that Montalvo could satisfy.

### Whether bail is being used as an instrument of oppression

Montalvo presents no argument or evidence that bail is being used as an instrument of oppression in this case. Our independent review of the habeas corpus record likewise does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent Montalvo from posting bail.

### Other factors

In addition to the considerations enumerated in the Code of Criminal Procedure, courts also consider the defendant's work record, family ties, residency, criminal record, conformity with previous bond conditions and aggravating factors involved in the offense. See Ex parte Rubac, 611 S.W.2d at 849. Here, on balance, these factors suggest that a high bond is justified. Montalvo was twenty years old at the time of the hearing on his petition to reduce bail. Earlier in the same year he had defaulted on a bond posted in connection with charges that he burglarized a motor vehicle. After defaulting on the bond he pleaded guilty and served time for the burglary charge before the incident in which Sanchez was murdered. Montalvo fled to Mexico with his brothers, where other members of Montalvo's family also live. Although Montalvo had two children in the Houston area and was expecting the imminent births of two more children at the time of the hearing, the evidence at the hearing suggested that he was separated from the mother of the children. Moreover, the evidence at the hearing suggested that Montalvo has no meaningful work history that would establish an additional tie to the Houston area.

Montalvo testified that he returned to Houston believing he would be able to explain that he was not the person who stabbed Sanchez, and thus clear his name. Now that, rather than achieving exoneration, he has been charged with murder, the trial court could have reasonably concluded that his history demonstrates he is a flight risk, justifying high bail.

### No abuse of discretion

In light of the foregoing analysis, we conclude that the trial court did not abuse its discretion in setting bail at $100,000 for the murder charge against Montalvo. That amount is not clearly excessive in light of the seriousness of the offense of murder and the violent circumstances of the alleged crime, even taking into account the circumstance that Montalvo's alleged role may have been limited to assistance and encouragement, as opposed to directly stabbing the murder victim. Montalvo did establish some factors that could justify a lower amount of bail, such as Montalvo's voluntary submission to the police and the evidence of his limited funds available to post a bond. However, still other factors support a higher amount of bail, such as evidence suggesting that Montalvo may be a flight risk.

It is not our role to simply substitute our judgment for that of the trial court. Because we conclude that the trial court's ruling is within the zone of reasonable disagreement about the proper amount of bail in this circumstance, we will not disturb the trial court's ruling.

## II. Appointed counsel

Finally, we consider Montalvo's request that we direct the trial court to reinstate Tony Aninao as his appointed trial counsel.

This is an appeal from denial of Montalvo's petition for habeas corpus. Montalvo's right to appeal is limited to the matters properly raised in his habeas corpus petition. The statutory authority for Montalvo's petition is Texas Code of Criminal Procedure article 11.24, which provides:

Where a person has been committed to custody for failing to enter into bond, he is entitled to the writ of habeas corpus, if it be stated in the petition that there was no sufficient cause for requiring bail, or that the bail required is excessive. If the proof sustains the petition, it will entitle the party to be discharged, or have the bail reduced.

Article 11.24 provides no authority for Montalvo to raise any issue in his habeas corpus petition other than the cause for or excessiveness of his bail. Moreover, the appellate record reflects that in fact, no issue relating to the appointment of trial counsel was raised in the habeas corpus petition or hearing. Aninao filed his motion to withdraw in the murder case (trial court cause number 1237568), not the habeas corpus proceeding (trial court cause number 1242494), after the trial court had already denied the habeas corpus petition and after Montalvo had filed his notice of appeal.

Even if the issue of appointed counsel had been raised in the course of the habeas corpus proceeding, we still could not consider it. Appellate Rule 31.2 expressly provides that "[t]he appellate court will not review any incidental question that might have arisen on the hearing of the application before the trial court." TEX.R.APP. P. 31.2.

We thus conclude that we lack jurisdiction to consider Montalvo's request that Aninao be reinstated as his appointed trial counsel.

## Conclusion

We affirm the judgment of the trial court.

Justice SHARP dissenting in part and concurring in part.

JIM SHARP, Justice, dissenting and concurring.

Appellant, Guillermo Montalvo, surrendered to Houston Police Department officers on October 17, 2009. The following day, pursuant to the District Court Bail Schedule of the Harris County District Courts, the Magistrate set bail at $50,000.[1] On November 20, 2009, Montalvo filed an original application for a writ of habeas corpus seeking to reduce the bond to $5,000. On December 10, 2009, the trial court held a hearing on the writ during which counsel for the State requested that the bond be increased to $200,000 and Montalvo asked the court to reduce the bond to $20,000. The trial court increased the amount of the bond to $100,000.

When the Magistrate initially set the bond at $50,000, the following facts were all of record: (1) Montalvo was a lifelong Houstonian with ties to the city that included parents, siblings, and children; (2) Montalvo previously had a Harris County bond revoked for failure to appear at a court setting for a prior misdemeanor; (3) immediately subsequent to the alleged commission of the current offense, Montalvo visited two small towns south of the Rio Grande River on the Texas border; and (5) very soon thereafter he made arrangements with two different Houston Police officers to return to Houston and voluntarily surrender himself.

Article 17.09(3) of the Texas Code of Criminal Procedure provides the parameters by which a defendant's bond may be changed and, in pertinent part, states that the judge or magistrate may set a new bond "[w]hen the bond is defective, excessive or insufficient in amount, ... or for any other good and sufficient cause...." TEX.CODE CRIM. PROC. ANN. art. 17.09(3) (Vernon Supp.2009). The purpose of a

1. *See* http://www.justex.net/BailBond Schedule.aspx.

bond being the assurance of the defendant's presence in court, the original $50,000 bond could not be considered *insufficient* inasmuch as Montalvo had not and testified that he *could not* raise such a sum. As the bond is now set at $100,000, the excessiveness of the original bond is not before us. Moreover, the only new information gleaned from the hearing on the habeas writ was Montalvo's inability to make the original $50,000 bond and that the police knew that he was not the one who stabbed the decedent. As such, the record is devoid of *"any other good and sufficient cause"* to increase the bond and I would hold that the trial court abused its discretion in doubling the bond amount absent of such cause.

I join the portion of the majority's opinion regarding Montalvo's second point of error, which pertains to the appointment/withdrawal of appointed counsel. However, for the reasons set forth above, I dissent to the portion of the majority's opinion regarding Montalvo's first point of error.