**Opinion issued July 5, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00176-CR

————————————

**KELVIN LYNN O'BRIEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1328129**

---

## MEMORANDUM OPINION

Kelvin Lynn O'Brien, is charged with the felony offense of engaging in organized criminal activity by participating in a combination to commit theft of items worth over $200,000. O'Brien filed an application for a writ of habeas corpus and requested that his bond be reduced from $750,000 to an amount under

$200,000. After holding a hearing, the trial court denied O'Brien's request for a bond reduction. In his sole issue on appeal, O'Brien argues that the trial court abused its discretion in refusing to reduce the amount of his bond.

## Background

O'Brien asserts that the trial court abused its discretion in refusing to reduce his bond and argues that his bond should be reduced to $150,000. At the hearing on O'Brien's writ of habeas corpus, the trial court admitted into evidence a probable cause affidavit signed by Houston Police Department Officer F. Quinn. The affidavit showed that police suspected that O'Brien and two other men, one of which was O'Brien's brother, broke into a Harris County jewelry and gold store, Karat 22, and stole $6,000,000 worth of gold, jewelry, diamonds, and watches. The investigation showed that in the weeks following the theft, one of O'Brien's suspected accomplices sold over $3,000,000 worth of melted gold to a third party. During the same timeframe, witnesses saw O'Brien dismantling Rolex watches, removing stones from jewelry, and removing serial numbers from diamonds. In O'Brien's home, police recovered diamond appraisal certificates dated after the alleged theft. Seven of the appraisal certificates matched the descriptions of diamonds stolen from Karat 22.

O'Brien's bail initially was set at $12,000,000. On O'Brien's motions, the trial court reduced it first to $1,000,000, and later to $750,000.

## Standard of Review and Applicable Law

We review a trial court's decision regarding bond settings for an abuse of discretion. *See Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. 1981); *Montalvo v. State*, 315 S.W.3d 588, 592 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When reviewing a trial court's decision, we will not disturb that ruling as long as it is "at least within the zone of reasonable disagreement." *Cooley v. State*, 232 S.W.3d 228, 234 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "But an abuse of discretion review requires more of the appellate court than simply deciding that the trial court did not rule arbitrarily or capriciously. The appellate court must instead measure the trial court's ruling against the relevant criteria by which the ruling was made." *Id.*

The primary purpose for setting bond is to secure the presence of the defendant at his trial. *Ex parte Vasquez*, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); *Ex parte Bonilla*, 742 S.W.2d 743, 744 (Tex. App.—Houston [1st Dist.] 1987, no pet.). The amount of bail should be set sufficiently high to give reasonable assurance that the accused will comply with the undertaking, but should not be set so high as to be an instrument of oppression. *Ex parte Bufkin*, 553 S.W.2d 116, 118 (Tex. Crim. App. 1977); *Ex parte Willman*, 695 S.W.2d 752, 753 (Tex. App.—Houston [1st Dist.] 1985, no pet.). Courts must consider the following statutory factors in setting bail:

1. The bail shall be sufficiently high to give reasonable assurance that a criminal defendant will appear at trial and comply with other court orders and conditions of the bond.

2. The power to require bail is not to be used as an instrument of oppression.

3. The nature of the offense and the circumstances of its commission.

4. The ability to make bail is to be regarded, and proof may be taken on this point.

5. The future safety of a victim of the alleged offense and the community.

*See* TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2005); *Ludwig v. State*, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991) (noting that the court is to be governed in the exercise of its discretion by the Constitution and by the article 17.15 factors). Courts should also consider the defendant's work record, family ties, length of residency, past criminal record, conformity with previous bond conditions, other outstanding bonds, and aggravating factors involved in the offense. *See Rubac*, 611 S.W.2d at 849–50; *Golden v. State*, 288 S.W.3d 516, 519 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The burden of proof is upon a defendant who claims bail is excessive. *Rubac*, 611 S.W.2d at 849.

### Analysis

#### A. The nature of the offense

The defendant's potential sentence and the nature of the crime are "primary factors" for us to consider. *Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex.

App.—Fort Worth 2004, pet ref'd.); *see also Montalvo*, 315 S.W.3d at 593 (noting that consideration of nature and circumstances of offense requires us to consider range of punishment permitted in event of conviction). When the offense is serious and involves aggravating factors that may result in a lengthy prison sentence, bail must be set sufficiently high to secure the defendant's presence at trial. *See Ex parte Hulin*, 31 S.W.3d 754, 761 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

O'Brien is charged with engaging in organized criminal activity by participating with two other men in committing a theft of property worth more than $200,000, a first degree felony. TEX. PENAL CODE. ANN. § 31.03(e)(7) (West Supp. 2011). One may be charged with first degree theft if the value of the stolen items exceeds $200,000. O'Brien is alleged to have stolen property worth thirty times that amount. If convicted, O'Brien is subject to a sentence of five to ninety-nine years or life. TEX. PENAL CODE ANN. § 12.32 (West 2011). As the State pointed out to the trial court, our sister court previously has affirmed a trial court's imposition of far higher bail in a case in which the defendant was also charged with engaging in organized crime for allegedly participating in the theft of automobiles worth far less than what O'Brien is alleged to have stolen in this case. *See Ex parte Waddell*, No. 14-02-01237-CR, 2003 WL 21403545, *1 (Tex. App.—Houston [14th Dist.] June 19, 2003, no pet.) (mem. op., not designated for

5

publication) (holding pretrial bail of $1,600,000 was not excessive where appellant was charged with theft of automobiles worth approximately $788,000, could be sentenced to between five to ninety-nine years in prison, and presented evidence that he could only raise a bond of $50,000).

## B. Bail sufficient to assure appearance but not oppress

A trial court should set bail sufficiently high to provide reasonable assurance that the defendant will appear at trial. *Montalvo*, 315 S.W.3d at 593. "A defendant's ties to the community and work history bear on the adequacy of bail to give reasonable assurance he will appear." *Richardson v. State*, 181 S.W.3d 756, 759 (Tex. App.—Waco 2005, no pet.). We also consider whether the record reflects that the trial court made its decision regarding the bail amount "for the purpose of forcing [the defendant] to remain incarcerated pending trial." *See Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Ex parte Harris*, 733 S.W.2d 712, 714 (Tex. App.—Austin 1987, no pet.) (trial judge stated, "I'd rather see him in jail than to see someone's life taken . . . .")).

Here, the trial court expressed concern over O'Brien appearing at trial. Its comments also suggest that the trial court considered the safety of the community, and the possibility that O'Brien not forthcoming about all of the assets available to him to use as collateral. And nothing in the record suggests that the trial court set

bail at $750,000 in order to prevent O'Brien from posting bail. *See Montalvo*, 315 S.W.3d at 596 ("Our independent review of the habeas corpus record likewise does not suggest that the trial court deliberately set bail at an excessively high level solely to prevent Montalvo from posting bail.").

The fact that the record does not reveal that O'Brien either resides in or has ties to Harris County is also a relevant consideration. O'Brien and his wife, Maggie O'Brien, reside in Dallas. O'Brien owns a business in the Dallas area that buys and sells gold and jewelry, but there is no evidence of his role in the business. Nor is there any other evidence of other employment, family, property, or other ties to Harris County. These factors weigh in favor of setting a high bail to ensure his presence at trial. *Milner*, 263 S.W.3d at 149 (trial court could have concluded high bail was necessary in part because defendant was unemployed, owned no property in the area, and other than being close to his two children and family, defendant had no other reason to remain in county).

### C. Ability to pay bond

Unless he has shown that his funds and those of his family have been exhausted, a defendant must usually show that he made an unsuccessful effort to furnish bail before bail can be determined to be excessive. *Id.* (considering, in addition to defendant's financial resources, those of defendant's mother); *see also Montalvo*, 315 S.W.3d at 595 (taking into account there was no evidence about

whether family members could help defendant make bail). If, however, both the defendant and his family indicate a financial inability to procure a bond, the court will not require her "to do a useless thing." *Id.* at 149–50 (quoting *Ex parte Dueitt*, 529 S.W.2d 531, 532–33 (Tex. Crim. App. 1975)). "[T]he ability of an accused to make bail does not itself control the amount of bail, even if the accused is indigent." *Wright v. State*, 976 S.W.2d 815, 820 (Tex. App.—Houston [1st Dist.] 1998, no pet.). If the defendant's ability to make bond in a specific amount controlled, "the role of the trial court in setting bond would be completely eliminated and the accused would be in the position to determine what his bond should be." *Milner*, 263 S.W.3d at 150.

O'Brien did not testify at the hearing. The only live witness was Sean Burns, a bondsman in Harris County. According to Burns, in order to get a $750,000 bond, O'Brien would have to pay a $75,000 fee and provide additional collateral worth close to $1,000,000. In support of his argument that bond is excessive, O'Brien relies, in part, on Burns's testimony that Burns personally would be unable to provide a bond of that amount, and that he knew of only one bondsman in Harris County who could post a bond of that size. There was no evidence that O'Brien or his family attempted to secure a bond from anyone other than Burns, including the bondsman who Burns testified would be able to post a bond of that size. Moreover, this court has held that the ability of a bail bondsman

8

to post bond should not be a controlling factor for the fixing of bail by the trial court. *Wright*, 976 S.W.2d at 820.

Similarly, although O'Brien argues that he does not have the ability to post a $750,000 bond, the trial court noted that it did not believe that O'Brien had addressed all of the collateral he could use to secure his bond. O'Brien offered the affidavit of his wife, Maggie, into evidence at the hearing. In it, Maggie avers that she earns a base salary of $65,000 a year, had approximately $5,000 in a checking account, $3,500 total in two savings accounts, a credit card with a zero balance, a $5,000 line of credit, and that she owned one Mercedes worth $15,000. The affidavit further states that O'Brien "has only one checking account" and that it "has a negative balance." Although the record reflects that O'Brien owns a business in Dallas, there was no evidence of O'Brien's earnings from it or any other source of employment, no evidence of the income that O'Brien's business generates, of the value of the business, or of whether the business had any assets that would be available to O'Brien to use as collateral. Likewise, although the evidence showed that the O'Briens purchased, after the theft, a boat and Land Rover for $100,000 each, Maggie's affidavit did not address these assets. Nor did her affidavit address the diamonds Maggie reported finding in the washing machine while doing O'Brien's laundry on the day after the theft.

With respect to real estate, the record shows that O'Brien bought a home for approximately $450,000 cash shortly after the theft and then installed an $85,000 pool. O'Brien claims the house and pool cannot be sold and, in any event, are now worth only $275,000, or slightly more than half of what they cost. Finally, with respect to the ability of O'Brien's family to help him procure the bond, the record shows only that O'Brien's brother had heavy equipment worth over $1,000,000 available to him to use as collateral and that he was able to make his own $750,000 bail. O'Brien offered no other information about what financial assistance his family could or could not provide. *See Montalvo*, 315 S.W.3d at 595 (affirming $100,000 bond where appellant offered no evidence about whether his family had any ability to help him make bail). Having considered this evidence, the trial court itself commented that it believed O'Brien had not been forthcoming about what assets were available to him to offer as collateral.

**D. The future safety of the victim of the alleged offense and the community**

In support of its argument that O'Brien would be a continuing danger, the State points to O'Brien's four felony convictions, including one for aggravated assault with a deadly weapon and possession of a prohibited weapon. O'Brien also was arrested and charged in a 2007 jewelry store burglary, and he is a suspect in other burglaries in Texas and Oklahoma. Nevertheless, there was no evidence at

the hearing that specifically addressed whether O'Brien would pose a threat to the safety of the community or of the complainant.

## Conclusion

On balance, the evidence in the record suggests that a high bond is justified. O'Brien failed to demonstrate ties to the community or a favorable work record, and the offense with which he is charged carries the possibility of a substantial sentence. There is scarce to no information about various assets that the record suggests may be available for him to use as collateral to post bond, and there has been no showing about whether his family can help him post bond. In light of the foregoing analysis, and having considered all of the evidence in the record in light of the Constitution and the factors enumerated in article 17.15, we cannot conclude that the trial court abused its discretion in refusing to further reduce O'Brien's bail below $750,000.

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Justices Higley, Sharp, and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).