

# IN THE
# TENTH COURT OF APPEALS

### No. 10-18-00387-CR
### No. 10-18-00388-CR
### No. 10-18-00389-CR

## EX PARTE MICHAEL BLAKE JONES

**From the 85th District Court**
**Brazos County, Texas**
**Trial Court Nos.**
**18-04697-CRF-85; 18-04699-CRF-85; 18-04701-CRF-85**

## MEMORANDUM OPINION

Michael Blake Jones is charged with aggravated assault of a public servant, assault with bodily injury against a family or household member two or more times within a 12 month period, and criminal mischief. *See* TEX. PENAL CODE ANN. §§ 22.02(b)(2)(A); 25.11; 28.03(a), (b)(4)(A) (West 2019). Bail was set at $250,000 for each offense, totaling $750,000. Jones filed a writ of habeas corpus contesting the amount, and after a hearing, bail remained the same for the aggravated assault but was reduced to $150,000 for the assault, family violence and $100,000 for the criminal mischief. Jones again complained by writ of habeas corpus about the amount set. After a second hearing, the trial court denied the

writ. Because the trial court did not abuse its discretion in denying the second writ, we affirm the trial court's Order.

**BAIL**

In his sole issue in each of these appeals, Jones contends the trial court erred in denying Jones's request to reduce the bail amounts set in each case.

Generally, a writ applicant has the burden of proving the facts which would entitle the applicant to relief. *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993). The same holds true for an applicant in a bail reduction proceeding. *See Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980); *Ex parte Plumb*, 595 S.W.2d 544, 546 (Tex. Crim. App. 1980). Consequently, the applicant in a habeas proceeding or on appeal has the burden to prove that bail is excessive. *See ex parte Rubac*, 611 S.W.2d 848, 849 (Tex. Crim. App. 1981); *see also Ex parte Benefield*, 403 S.W.3d 240, 242 (Tex. Crim. App. 2013) (Cochran, J., concurring).

When reviewing a trial court's determination regarding the amount of bail set, appellate courts apply an abuse-of-discretion standard. *See Ex parte Rubac*, 611 S.W.2d 848, 849-50 (Tex. Crim. App. 1981). In determining whether the trial court abused its discretion, we are guided by Article 17.15 as to the rules for fixing bail. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2015); *see Ludwig v. State*, 812 S.W.2d 323, 324 (Tex. Crim. App. 1991). In addition, other factors to be considered include the applicant's work record, family ties, residency, criminal record, conformity with previous bail conditions, and aggravating factors involved in the offense. *See Ex parte Rubac*, 611 S.W.2d at 849-50; *Ex parte Davis*, 147 S.W.3d 546, 548 (Tex. App.—Waco 2004, no pet.)

*Nature and Circumstances of the Offense*

In determining whether the trial court abused its discretion, the defendant's potential sentence and the nature of the crime are "primary factors" for us to consider. *See Ex parte Hunt*, 138 S.W.3d 503, 506 (Tex. App.—Fort Worth 2004, pet. ref'd); *see also Montalvo*, 315 S.W.3d 588, 593 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (noting that consideration of nature and circumstances of offense requires us to consider range of punishment permitted in event of conviction). When the nature of the offense is serious and a lengthy sentence following trial is probable, bail should be "set sufficiently high to secure the presence of the accused at trial because the accused's reaction to the prospect of a lengthy prison sentence might be not to appear." *See Ex parte Hulin*, 31 S.W.3d 754, 761 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

Here, Jones is charged with three offenses: aggravated assault against a public servant, a first-degree felony, *see* TEX. PENAL CODE ANN. § 22.02(b)(2)(A) (West 2019), subject to a punishment of 5 to 99 years or life in prison and a fine of up to a $10,000, *id*. § 12.32; assault with bodily injury against a family or household member two or more times within a 12-month period, a third-degree felony, *id*. § 25.11, subject to a punishment of 2 to 10 years and a fine of up to $10,000, *id*. § 12.34; and criminal mischief in the amount of $2,500 or more but less than $30,000, a state jail felony, *id*. § 28.03(a), (b)(4)(A), subject to a punishment of 180 days to 2 years in State Jail and a fine of up to $10,000. *Id*. § 12.35.

According to the testimony and evidence presented at both habeas hearings, Jones was intoxicated when he arrived very early in the morning of August 13, 2018 at the residence of his former girlfriend, Cari. She would not let him inside. At about 7:30 a.m.,

Jones called Cari and asked to come in, which she allowed. While in the residence, they argued and Jones left. Jones then kicked in the front door, shoved Cari, grabbed her arm, and grabbed her breast which caused her pain. Jones then headed to Rockies Grill and Saloon where Cari and Jones worked. Later, Cari and Jones's dad went to Rockies to check on Jones. At Rockies, Jones and Cari argued. As she tried to enter the building, Jones shoved her away from the door and into a pillar which caused Cari pain.

These assaults became the precursor to a 16-hour, "unprecedented" standoff between Jones and the police at Rockies after Jones fired three shots from a gun in the bar and Cari called police. Numerous police officers, police crisis negotiators, and federal agents responded to the scene.

In an attempt to contact Jones, police used a robot to open lines of communication with him and establish a video link. As the robot approached the front of Rockies, Jones walked out into the parking lot, "grabbed the robot, and tipped it over." As a result of his actions, the camera mast on the center of the robot was snapped off, wires running from the camera to the rest of the robot were broken, and the video feed was damaged. The repairs to the robot were estimated to exceed $3,000.

During the standoff, Jones spoke off-and-on to police, mainly through profanity-laced statements, only to the extent of challenging officers, ignoring their requests, pleas, and attempts to peacefully resolve the situation. Jones barricaded himself inside the building and continued to fire indiscriminately during the course of the standoff. Jones was seen multiple times with either a handgun in his waistband or in his hand. After several hours, officers heard an additional shot from inside the building. Not long after

that shot was heard, Jones emerged and could be seen holding a handgun upwards with his arm at a 90 degree angle. Jones then began to lower his arm and extend it towards the general vicinity of officers positioned in the parking lot. The officers felt that Jones's actions were an immediate threat to their lives. Reacting to Jones, an FBI agent fired a shot at Jones but missed.

During the standoff, several people endangered at nearby businesses, as well media representatives, had to be evacuated. One of the rounds fired by Jones passed through a wall of Rockies into a restaurant next door. That restaurant was occupied by employees and was about to open to the public as the situation began. Many surrounding businesses and homes were closed and evacuated. Busy roadways around the area were also closed.

Looking at the offenses individually, the criminal mischief and assault offenses do not appear to be serious and might not result in lengthy prison sentences. But because these offenses were tied to a lengthy standoff and the offense of aggravated assault of a peace officer, which is serious and would result in a lengthy prison sentence, the trial court could have determined that this factor weighed heavily against reducing bail in any of the cases.

*Ability to Make Bail*

The accused's ability to make bail is only a factor to be considered in determining the appropriate amount of bail. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(4) (West 2015); *Ex parte Scott*, 122 S.W.3d 866, 870 (Tex. App.—Fort Worth 2003, no pet.). "To show that he is unable to make bail, a defendant generally must show that his funds and his family's

funds have been exhausted." *Milner v. State*, 263 S.W.3d 146, 149 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (internal citations omitted). Simply because a defendant cannot meet the bail set by the trial court does not automatically render it excessive. *Ex parte Scott*, 122 S.W.3d at 870. *See also Ex parte Charlesworth*, 600 S.W.2d 316, 317 (Tex. Crim. App. 1980). "If the ability to make [bail] in a specified amount controlled, then the role of the trial court in setting [bail] would be completely eliminated, and the accused would be in the unique posture of determining what his [bail] should be." *Ex parte Scott*, 122 S.W.3d at 870.

An investigator testified at the first hearing that Jones no longer worked at Rockies, had no checking or savings accounts, and had no land. Jones did have, however, a truck worth $10,000 to $12,000 and an RV worth $5,000. The investigator believed that Jones's family would loan Jones $10,000 for bail but would expect Jones to sell his assets to pay back the family rather than using the loan and the assets to post bail.

A letter from Jones's sister was introduced into evidence at the second hearing in which she explained that Jones previously had $60,000 in a 401K but had cashed it out and given it to Cari to move Rockies to its current location.[1] Jones's sister also explained that Jones's parents were retired and lived on a fixed income. They had nothing to put up as collateral or liquidate to raise funds. As for Jones's sister, she explained that she and her husband had a mortgage, student loans, car payments, and a young child to consider, and concluded that she did not have the money to pay the $50,000 bond

---

[1] There was some indication that Cari was the owner of Rockies.

premium required for a bond in the total bail amount of $500,000. Her primary concern however, was to seek treatment for Jones at a private treatment facility and that "[e]very dollar we spend on posting bond is one less dollar we have" for other expenses such as attorney's fees, restitution, and the private treatment facility. There was no evidence as to how much the private facility would cost.

Based on this evidence, the trial court could have determined that Jones had not proven that he and his family did not have the ability to make bail as set.

*Safety of the Victim and the Community*

The future safety of a victim of the alleged offense and the community shall be considered when setting the amount of bail. TEX. CODE CRIM. PROC. ANN. art. 17.15(5) (West 2015). Cari indicated to a victim assistance coordinator that about four months before the standoff, Jones had an outburst in front of Cari's children and broke an iPad. Afterwards, Jones's drinking and his anger toward Cari escalated. Jones blamed Cari for the standoff. He called her multiple times from jail the day he was arrested, and she had to have her number blocked for calls from the jail. She was afraid that if Jones got out, he would find her and she would have to move. Jones's family advocated Jones's release to a treatment facility in Houston where the facility's plans for Jones included only a 60 day stay and then a reevaluation. There was no evidence regarding what would happen to Jones if or when he was released or if he failed to go to, or stay at, that facility.

On appeal, Jones contends that since no one was seriously injured, he was not a threat to the community. However, during the standoff, Jones randomly shot a gun, causing a bullet to enter the restaurant next door, and caused the evacuation of many

businesses and homes, the closure of numerous roads, and an overwhelming police response during the extended standoff.

Based on this evidence, the trial court could have determined Jones was a continuing threat to Cari and the community which warranted the amount of bail as set.

*Community and Family Ties*

There was no specific evidence about Jones's ties to the community and his family. General evidence was presented that Cari and Jones had a relationship for two years and lived in Bryan. Jones had parents, a sister, and possibly children; but there was no evidence submitted as to where the parents lived, where the sister lived, or where children, if any, lived or how they were supported by Jones. At some point, Jones lived with his father, possibly in Bryan, rent free. We do not know for how long. There was very little information about Jones's work history presented to the trial court. Jones used to work with Cari at Rockies but there was no evidence of Jones's employment history prior to that time. Jones's sister represented that Jones had the support of his family and "the community," but again, no information was presented as to where the family lived or where the community was that supported Jones.

*Prior Convictions/Conditions of Bail*

Jones has been convicted twice for driving while license invalid and once for possession of marijuana. He had been arrested three additional times on other charges, but there was no evidence that those arrests lead to any convictions. There was no evidence regarding whether Jones was released on bail in connection with any of these convictions or arrests. Thus, the Court was unable to evaluate whether Jones had

complied with previous conditions of bail or even if he had been released on bail as a result of the prior convictions or arrests.

**ANALYSIS**

In determining whether the trial court abused its discretion by denying Jones's applications, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the trial court's action was arbitrary or unreasonable. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). We must keep in mind that merely because the trial court decided a matter within its discretion in a different manner than this Court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *See id.*

Although Jones had several prior convictions, but generally not involving specific incidents of violence, his actions surrounding the charged offenses were violent, involved significant risk to himself and others, and involved the potential for significant prison time. Affording due deference to the trial court's ruling, bearing in mind it is Jones's burden, and considering the evidence, or lack thereof, on the factors to be considered in setting bail, we hold that Jones has failed to demonstrate that the bail amounts were excessive individually or in total. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2015); *see also Ex parte Rubac*, 611 S.W.2d 848, 850 (Tex. Crim. App. 1981); *Ex parte Scott*, 122 S.W.3d 866, 868 (Tex. App.—Fort Worth 2003, no pet.). Therefore, based on the evidence presented in this case, we do not find that the trial court abused its discretion in denying Jones's writ.

Jones's sole issue in each appeal is overruled.

**CONCLUSION**

Having overruled Jones's sole issue on appeal, we affirm the trial court's Order

Denying Application for Writ of Habeas Corpus.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Affirmed
Opinion delivered and filed March 27, 2019
Do not publish
[CR25]

